ON REMAND
JiPER CURIAM.
This case is on remand from the Supreme Court of Louisiana with instructions to this Court (Fifth Circuit Court of Appeal) to conduct a harmless error analysis based on the trial court record.
Earlier, Donald J. Vale and Gayle P. Neid-hardt were convicted of possession of heroin with intent to distribute, LSA-R.S. 40:966(A)(1), in the 24th Judicial District Court. The Fifth Circuit affirmed at 650 So.2d 379 (La.App. 5 Cir.1995).
*918 The Supreme Court, at 661 So.2d 1366 (La.1995), granted certiorari to consider whether the trial judge unduly curtailed cross-examination of Michael Bergeron with regard to an unrelated charge pending in another section of court at the time of the Vale-Neidhardt trial. The Supreme Court found that this was error; consequently, this remand.
The evidence in this case was overwhelmingly one-sided in favor of the state. Evidence of Bergeron’s arrest for having a concealed weapon and the fact that this charge was pending would not have made, beyond a reasonable doubt, any difference to the jury. Bergeron’s character had been under serious attack during the entire trial. One more item of evidence discrediting him as a truthful witness would have been of no significance. We would affirm, again, these convictions.
The pending, unrelated charge against Bergeron, a key prosecution witness, was for carrying a concealed weapon, a knife, by a convicted felon. The penalty for violation of this criminal statute, LSA-R.S. 14:95.1, is | imprisonment at hard labor for not less that three years or more than 10 years, plus a fine.
Could Bergeron’s testimony have been rendered more suspect and unbelievable if the jury had been told of the concealed weapon charge? The jury was advised, again and again, of Bergeron’s sole motivation for testifying. He was given full immunity. The jury also heard substantial testimony about Bergeron’s law-breaking past.
In the state’s opening statement, the jury was informed that Bergeron “... was selling heroin ... on the streets of Jefferson Parish.” In the opening statement by one of the defendant’s attorneys, the jurors were told that at the end of the trial, it (the jury) would be left “... with believing or disbelieving an individual by the name of Michael Bergeron. We’re going to show you what kind of garbage can Michael Bergeron is. We’re going to show you all the reasons in the world why he would have to lie, has lied and will probably continue to lie as long as the Jefferson Parish Narcotics Office allows him to do so
[[Image here]]
“You’ll have to decide ... based on the word of what is nothing more than a piece of garbage, Michael Bergeron.”
Lt. John Devlin, the Sheriffs office’s narcotics enforcement group supervisor, testified that he had seen Bergeron selling drugs on the street. Lt. Devlin was asked whether Bergeron was a street-level drug dealer. His response: ‘Wes, sir, and a user. He deals to supply his habit.”
Officer O.J. Orgeron of the narcotics division described his surveillance of Bergeron. ‘We followed him ...”, Orgeron said, “and we saw him meet with other people on separate, different occasions, which looked like, in my opinion, to be narcotics transactions.”
Another police officer, William Grieff, testified that Bergeron was only |3a street-level dealer and that the narcotics department was “not interested in just that.” After five days of watching Bergeron, Grieff said the police knew his supply was running low and that “... he was going to meet with a supplier.”
When Bergeron took the stand, he said he been convicted in federal court of conspiracy to possess and distribute narcotics, for which he received a 10-year jail sentence. He also has convictions for DWI, for attempted simple burglary, for which he served 33 months of a four-year sentence, and for issuing worthless checks. He said he had used heroin “off and on” since he was 17 years old, that he sold heroin to support his drug habit and that he was currently enrolled in a methadone program. He stated he was unemployed, receiving worker’s compensation payments.
In closing arguments to the jury, Bergeron was called a “garbage can” and a person who lied to “save his hide.” The prosecuting attorney said that the state has to use witnesses that are available and that “... sometimes we make deals with sinners to get to the devil.”
At trial, the defense called only one witness, Philip Rowley, who said that he had purchased heroin from Bergeron and that Bergeron used Tupperware containers similar to those found in the car Bergeron, Vale and Neidhardt were in when arrested. Row- *919-925 ley admitted to three prior criminal convictions.
The state produced other evidence supporting Bergeron’s testimony, including the $7,500.00 in cash found on top of Neidhardt’s purse in her automobile, which included five marked $20.00 bills given to Bergeron earlier by a confidential informer as payment for heroin; and the drug-related items seized at Neidhardt’s home, including six foil packages of heroin, a silver spoon with drug residue, syringes, a scale with a brown residue in the |4pan and Tupperware containers. Also recovered from the automobile were two plastic containers, one of which held a large amount of heroin.
Vale and Neidhardt argue that the concealed weapon violation was relatively new and that this pending charge gave Bergeron reason to expand his testimony and to recall other happenings. Considering what the jury already knew about Bergeron’s character and his reason for testifying as he did, the damaging potential of the blocked-out cross-examination, even if fully understood by jurors, would not have, beyond a reasonable doubt, made a difference in the outcome.
For the foregoing reasons, we reinstate our original decree affirming the convictions.