# STATE OF LOUISIANA

# COURT OF APPEAL, THIRD CIRCUIT

## 03-1773

**STATE OF LOUISIANA**

**VERSUS**

**KILEY M. WILLIAMS**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
THIRTY-THIRD JUDICIAL DISTRICT COURT
PARISH OF ALLEN, NO. CR-2003-1279
HONORABLE PATRICIA C. COLE, DISTRICT JUDGE
\*\*\*\*\*\*\*\*\*\*

**GLENN B. GREMILLION**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Glenn B. Gremillion and *John B. Scofield, Judges.

**\*Honorable John B. Scofield participated in this decision by appointment of the Louisiana Supreme Court as *Judge Pro Tempore*.**

**Thibodeaux, C.J., dissents and assigns written reasons.**

                           **AFFIRMED AND REMANDED**
                           **WITH INSTRUCTIONS.**

**Hon. Douglas L. Hebert, Jr.**
**District Attorney - 33rd JDC**
**P. O. Drawer 839**
**Oberlin, LA 70655**
**(337) 639-2641**
**Counsel for Plaintiff/Appellee**
      **State of Louisiana**

**Mary Constance Hanes**
**Louisiana Appellate Project**
**P. O. Box 4015**
**New Orleans, LA 70178-4015**
**(504) 866-6652**
**Counsel for Defendant/Appellant**
      **Kiley M. Williams**

**Kiley M. Williams**
**Basile Detention Center**
**3843 East Stagg Ave**
**Basile, LA 70515-5501**

GREMILLION, Judge.

In this case, the defendant, Kiley M. Williams, was convicted of attempted distribution of cocaine and sentenced to serve twelve years at hard labor without the benefit of parole, probation, or suspension of sentence. For the following reasons, we affirm and remand with instructions for the trial court to correct the court minutes.

## SUFFICIENCY OF EVIDENCE

In this assignment of error, Defendant contends there was insufficient evidence presented to support his conviction. He contends the videotapes do not conclusively show a drug transaction occurred and, considering the unusual circumstances involved, a rational trier of fact would be driven to have reasonable doubt.

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, *rehearing denied*, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the triers of fact beyond the sufficiency evaluations under the *Jackson* standard of review. *See State ex rel. Graffagnino*, 436 So.2d 559 (*citing State v. Richardson*, 425 So.2d 1228 (La.1983)). In order for this Court to affirm a conviction, however, the record must reflect that the state has satisfied its burden of proving the elements of the crime beyond a reasonable doubt.

*State v. Kennerson*, 96-1518, p. 5 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, 1371.

Defendant refers to the following quote from *State v. Mussall*, 523 So.2d

1305, 1311 (La.1988) (footnotes omitted), in support of his argument:

> After reviewing Jackson and the foregoing authorities, we conclude that a reviewing court may not disregard its duty under due process of law as interpreted by *Jackson v. Virginia* simply because the record contains testimony which tends to support each fact necessary to constitute the crime. If the court finds that no rational trier of fact viewing all of the evidence from a rational pro-prosecution standpoint could have found guilt beyond a reasonable doubt, the conviction cannot stand constitutionally. The actual trier of fact's *rational* credibility calls, evidence weighing and inference drawing are preserved through the requirement that upon judicial review all of the evidence is to be considered as if by a rational fact finder in the light most favorable to the prosecution, and by the admonition that the sufficiency inquiry does not require a court to ask itself whether it believes that the evidence at trial established guilt beyond a reasonable doubt. Thus, the reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence. As Professor Wright observes, the important points are that "the court is not to substitute its judgment of what the verdict should be for that of the jury, but that at the same time the jury cannot be permitted to speculate if the evidence is such that reasonable jurors must have a reasonable doubt." 2 C. Wright, supra, § 467, at 660-661 & n. 23.

In this case, Defendant was charged with distribution of cocaine, a violation of La.R.S. 40:967(A)(1). At trial, in order to prove the offense, the State called several witnesses which included Officer Scotty Laborde of the Oakdale Police Department, who testified that Ms. Tiwanna Gallington was the paid confidential informant in this case. Gallington testified that prior to September of 2002 she had used marijuana and cocaine. During that year, she agreed to start working with the Allen Parish Sheriff's Office making controlled buys of drugs. Gallington testified that she witnessed a drug raid of her children's babysitter's house. When she approached the scene to find out what was going on, Officer Perkins asked her if she wanted to make some money. At first, she stated she did not know, but later she

2

changed her mind and she contacted the officer.[1]  Officer Laborde testified he

contacted Gallington on May 2, 2002, regarding a controlled buy and the two met with

Officer Ben Perkins around 3:00 p.m.  When they met, Officer Laborde searched

Gallington and her vehicle.  Officer Perkins installed video and audio equipment in

the vehicle and they issued  money to her to purchase the drugs.  She was also

provided four plastic vials to serve as containers for any drugs she purchased.

According to Officer Laborde, a couple of individuals were being targeted that day,

including Defendant.

Officer Laborde testified that once Gallington departed, they maintained

audio contact with her and she was provided a cell phone for him to contact her and

also for her safety.  She was not to use the cell phone to arrange drug buys because it

was Officer Laborde's personal phone and he did not want his number to show up on

the dealer's caller ID.  If she wanted to call to arrange a transaction, she had to secure

another telephone.  Gallington testified that she called Defendant from her home

telephone.

We note that Gallington did not remain in the car after being searched

initially.  She left the car for approximately three to five minutes to use the telephone

to call Defendant and was not searched again before leaving to buy drugs.  During this

_____

[1]  Officer Perkins was asked about his reason for working with Gallington.  Specifically, he was asked, "Officer Perkins what considerations were made by you or somebody from the Sheriff's Office that you're aware of as an incentive to Tiwanna to work with you?"  He replied:

> She had information that would help with further investigations or ongoing investigations that we had.  It was merely by accident that I ran into her.  We was searching a house in Oakdale and she came as you know when you searching a house in Oakdale it draws a crowd.  We just started talking and one thing led to another and she ended up calling me a couple of days later and we met and we started making cases.

3

time, the audio recording equipment did not work. In Officer Laborde's opinion, this occurred because the microphone, which was on Gallington's body, was too far from the repeater for it to pick up. When Gallington returned to the car, she had a cordless telephone. Officer Laborde acknowledged that it is important to search the confidential informant (C.I.) and the vehicle before the "buy" to avoid the C.I. setting someone up. He also acknowledged that it would be easier for someone to hide drugs on themselves if they went outside the view of the cameras in the car.

Gallington testified that after she contacted Defendant, she returned to the car, drove around the corner, and met him. She said she told Defendant on the phone that she was looking for "sixty dollars' worth." The transaction was described by Gallington as follows:

> And driver door to driver door he handed me the drugs and I gave him the money and then I told him, "hey it's not right," I don't know the exact words but said, "well give me the little one back," and he took the little one and he gave me a bigger one and I say, "well I gave you sixty dollars," and he gave me a ten back.

During the transaction, the officers did not maintain visual contact with Gallington's vehicle because they had audio contact and they wanted to avoid being seen by suspected drug dealers. After the drug transaction was completed, Gallington drove to the prearranged location and Officer Laborde retrieved the evidence from the glove compartment. He then searched her and the vehicle and found no other drugs. Officer Laborde testified he was able to verify the information provided him by Gallington by watching the videotape of the transaction and the evidence he collected from the glove compartment. She denied planting the drugs in the vehicle and she testified she knew she was being observed the entire time.

Officer Laborde was questioned about Gallington's motivation for participating in the controlled buy. According to Officer Laborde, she was paid twenty-five dollars a "buy." He acknowledged that confidential informants may be in jeopardy in participating in controlled buys, but he testified he was not aware of any promises being made to Gallington by the Sheriff's Department for her participation. Officer Perkins testified that the only incentive he was aware of was that Gallington needed money because she indicated to him that she was raising children without child support. Gallington testified that drug dealers can be violent people, depending on what the circumstances. She testified she felt that at the time of the transaction she was not in danger; however, after they found out what she did, she would be. Further, she denied that there was any incentive other than the twenty-five dollars for her participation.

Defendant argues that there were unusual circumstances which support this assignment of error including the fact that Gallington stopped at her house after the officers searched her and before she made the drug buy. This, he argues, provided her the opportunity to obtain drugs and plant them in her vehicle. Further, he points out the fact that the audio recording failed while Gallington was in her house. Finally, Defendant argues the fact detectives were targeting him, and that Gallington could have lied about the drug transaction to keep her job as a paid informant.

We note that there were rational explanations given for Gallington stopping at her house and for the audio recording failing while she was in her house. The jury heard the evidence and had the opportunity to view the witnesses during their testimony. Additionally, the jury viewed a videotape which showed Gallington and

5

Defendant involved in a transaction during which they each reached out of their car window and Defendant gave Gallington something small enough to fit in her hand. After hearing the testimony presented at trial and viewing this tape, the jury chose to convict Defendant, although not of the charged crime. We find that after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime of distribution of cocaine proven beyond a reasonable doubt. Thus, because the evidence introduced at trial was sufficient to support a conviction for the charged offense, it also supports the jury's verdict on the lesser and included offense of attempted distribution of cocaine. *See State v. Harris*, 02-1589 (La. 5/20/03), 846 So.2d 709. Therefore, this assignment of error lacks merit.

## ADMISSION OF OTHER CRIMES EVIDENCE:
## FAILURE TO TIMELY OBJECT

Defendant contends the trial court erred in denying its motion for mistrial after Gallington testified that she bought drugs from Defendant on other occasions. During Gallington's direct examination, she testified that during the transaction, when Defendant gave her the drugs, she said, "hey it's not right." When the prosecutor asked why she said that, Gallington responded, "Because any other time I deal with him he knows that don't give me little stuff." After the direct examination and cross-examination were completed, during which several bench conferences were held, certain evidence was argued about and admitted, at least two breaks and more than one hour transpired, and evidence was proffered by Defendant, he moved for a mistrial on the grounds of other crimes evidence. The trial court denied the motion, noting Gallington is not a police officer and the prosecutor did not have any

6

forewarning that she was going to make this statement.

The State noted at trial, and now argues, that the objection was untimely as it was not made within a reasonable time following the statement by Gallington. Louisiana Code of Criminal Procedure Article 841 states in pertinent part, "[a]n irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence." Defendant cites *State v. Lee*, 346 So.2d 682 (La.1977) to say that the error must be brought to the judge's attention within a reasonable time. In *Lee*, the defendant was being retried after the supreme court reversed his conviction. At the second trial, during questioning of one of the witnesses, the prosecutor referred to the date of the first trial and mentioned there was a conviction. No objection was made by defense counsel at this point. During the state's rebuttal closing argument, the prosecutor again referred to the first trial and the fact there was a conviction. Shortly after these references, defense counsel objected and moved for a mistrial. On appeal, the state argued defense counsel's objection was untimely. The supreme court stated the issue to be decided was whether the belated motion for mistrial, made after repetition of an unobjected-to error, could be considered in the absence of an objection to the first improper reference. The court stated:

> Article 841 is not an inflexible rule imposed on criminal litigants without rationale or justification. It is necessary adjunct to our role as an appellate court which is intended to promote judicial efficiency and to insure fair play. See *State v. Smith*, 339 So.2d 829 (La.1977); *State v. Ervin*, 340 So.2d 1379 (La.1977); *State v. Marcell*, 320 So.2d 195 (La.1975). For example, its operation prevents a defendant from gambling for a favorable verdict and then, upon conviction, resorting on appeal to errors that could have been corrected at trial, had he but brought the errors to the judge's attention. *State v. Smith, supra*; *State v. Knight*, 323 So.2d 765 (La.1975); *State v. Marcell, supra*.
>
> . . . .

7

What our rules require is that counsel bring an error to the attention of the trial judge within a reasonable time after the error occurs so that he can cure the error or declare a mistrial. C.Cr.P. arts. 770, 771, 841. Generally, a contemporaneous objection must be made immediately. In certain instances, however, objections which come shortly thereafter will be considered timely, see *State v. Foss*, 310 So.2d 573 (La.1975), and there are even instances in which no objections are required because they would be a vain and useless act, see *State v. Ervin, supra*. Particularly may there be such exceptions to the general rule during closing argument for reasons expressed in the following law review comment:

> "one must recognize that the closing argument of the prosecutor may be so permeated with improprieties that constant objections may alienate the jurors or underscore the remark rather than erase it from their minds. Therefore, an objection at the end of the summation should be considered timely, and in some cases should be allowed outside the presence of the jury." (citations omitted) 34 L.L.Rev. 746, 759 (1974).

Moreover, we recognize that a prosecutor's prejudicial comments in closing argument may be considered by a federal court to violate federal due process guarantees even in the absence of a defense challenge or objection at trial. *United States v. Briggs, supra*; *United States v. Grunberger*, 431 F.2d 1062 (2d Cir. 1970); *United States v. Sawyer*, 347 F.2d 372 (4th Cir. 1965).

The only effect we can see in counsel's failure to promptly request relief was that the trial was unnecessarily continued beyond a point when it should have been aborted. We do not find that sufficient reason to bar defendant from making a later motion when the error was blatantly repeated. Therefore we hold that the trial judge erred in refusing to grant defendant a requested mistrial when the prosecution during rebuttal argument stated and stressed that defendant Lee had been convicted of this very murder on an earlier trial of the case.

*Id.* at 684-85.

In the other case cited by Defendant, *State v. Mullins*, 537 So.2d 386 (La.App. 4 Cir. 1988), the defense made an objection at the close of the state's closing argument. For the reasons discussed in *Lee*, the court found the error was preserved for appeal.

The year after *Lee* was decided, the supreme court dealt with this issue in *State v. Sepulvado*, 359 So.2d 137 (La.1978). In *Sepulvado*, the defendant contended on appeal that the trial court erred in allowing the state to question the victim about acts of sexual intercourse with the defendant other than the one at issue. During trial, the victim testified regarding two instances of sexual intercourse with the defendant. The prosecutor then asked her if she subsequently had sexual relations with the defendant. At that point, defense counsel objected. The supreme court held the objection came too late and the issue could not be raised on appeal.

A similar conclusion was reached by the supreme court that same year in *State v. Brown*, 354 So.2d 516 (La.1978). In *Brown*, during the cross-examination of witness Simmons, the prosecutor arguably made a reference to the witness' post-arrest silence. However, the supreme court found the objection to the question was not timely because it was not made until the prosecutor concluded two pages of cross-examination concerning the subject. Thus, the defense was not allowed to raise the error on appeal.

Considering the foregoing cases, as well as the cogent facts of this case (the statement made by Gallington is separated by a substantial amount of testimony, two courtroom breaks, much more than an hour, and thirty-five pages of transcript from the objection to motion for mistrial), we find that the objection was not timely made and, therefore, Defendant has not preserved this issue for appeal. Thus, this assignment of error is without merit.

However, Defendant further contends he was entitled to a discretionary mistrial pursuant to La.Code Crim.P. art. 771(2). He contends that admonition was

9

not sufficient to overcome the prejudice he suffered. Alternatively, he contends that the trial court should have at least admonished the jury to disregard the remark.

Louisiana Code of Criminal Procedure Article 771 states in pertinent part:

> In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
>
> . . . .
>
> (2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.
>
> In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.

In the present case, the challenged testimony was given in response to a question posed to Gallington by the prosecutor.

> The jurisprudence interpreting La.C.Cr.P. art. 771 has held that an impermissible reference to another crime deliberately elicited of a witness by the prosecutor would be imputable to the state and would mandate a mistrial. *State v. Madison*, 345 So.2d 485, 494 (La.1977); *State v. Overton*, 337 So.2d 1201, 1205 (La.1976). However, unsolicited and unresponsive testimony is not chargeable against the state to provide a ground for mandatory reversal of a conviction. *State v. Fowlkes*, 352 So.2d 208, 212 (La.1977). We are unable to clearly and unequivocally conclude that the reference was not responsive to the prosecutor's broad, vague question to Officer McCoy. However, we cannot find, nor does defendant claim, that the reference to other crimes was deliberately obtained by design of the prosecutor to prejudice the rights of defendant. Consequently, La.C.Cr.P. art. 771 does not mandate a mistrial.

*State v. Jack*, 554 So.2d 1292, 1296 (La.App. 1 Cir. 1989), *writ denied*, 560 So.2d 20 (La.1990).

10

It appears that the reference to the prior drug deals was not solicited or deliberately obtained by the prosecutor to prejudice the rights of Defendant. Thus, we submit the trial court did not err in denying Defendant's motion for mistrial. Additionally, Defendant's claim that the trial court erred in failing to admonish the jury to disregard the remark is without merit, as the Defense did not request admonition. *See State v. Texada*, 99-1009 (La.App. 3 Cir. 2/2/00), 756 So.2d 463, *writ denied*, 00-2751 (La. 6/29/01), 794 So.2d 824; *State v. Fowlkes*, 352 So.2d 208 (La.1977); and *Jack*, 554 So.2d 1292. Further, to have given an admonition at the time it was requested by Defendant would have served little or no purpose to benefit him and would have served to call attention to the issue of other crimes evidence that went unchallenged for a long period of time. For the foregoing reasons, this assignment of error has no merit.

### EVIDENCE OF MOTIVATION TO TESTIFY

Defendant contends the trial court erred in not allowing into evidence testimony regarding Gallington's motivation for being a confidential informant and also a witness in the case. During her testimony, Defendant orally requested permission to cross-examine Gallington regarding prior criminal activities, specifically, an incident in which she hit a man by the name of Leon Posey with a hammer. Defendant wished to question her "on any of those prior criminal activities that may have been an incentive for her or an interest for her to testify." In response to Defendant's request, the trial court issued the following ruling:

> The Court is not going to allow you to talk about the - - what you believe is the case with the facts of Leon Posey matter which may or may not have occurred. The officers have testified that they have made no other deals with her or given her no other consideration other than the twenty-

11

five dollars. And the twenty-five dollars was per buy not for making the case. Per buy. What you're talking about is her reason for working for the police. I don't know that that shows any particular bias against Kiley Williams or any other person other than making a buy against Leon Posey there she may have some kind of bias if he turned her in for any kind of offense. The Court will allow you to ask if there was any other consideration other than the twenty-five dollars and if she answers yes you can ask what that was. However, to go into something that is ordinarily impermissible without having the means to complete an impeachment and it's my understanding that you do not have the means at this time to complete the impeachment.

The evidence at issue was proffered by Defendant at the close of Gallington's direct testimony. The proffered evidence concerned two incidents in which Gallington was involved. In the first proffer, Gallington testified that in 2002, she hit a man named Leon Posey in the head with a hammer. Gallington's explanation for her actions was as follows:

Okay, on that particular day me and the children were sitting in the house watching WWF Wrestling. He walks into my house telling me he has the right to see his children. I said, "no you do not. You knock on my door before you enter." I was called a B-I-T-C-H and [he] told me I couldn't tell him when he could and could not see my kids and he hit me. I hit him back, he punched me in my head so in turn I got him in a headlock, drug him in the kitchen and hit him in the head with a hammer and after I hit him I went to Oakdale Police Department and talked to Officer Laticia Reeves and the other female officer and I told them what I did. I took the hammer and told them exactly what I did and they told me that he was an unauthorized entry and I had the right to defend my house. Therefore, he did not go to the police and turn - - and tell - - and I guess because he knew he was in the wrong and they would have put charge on him. That's exactly what happened.

In the second proffer, Gallington testified she was indicted for cutting Kevin Melbert. This incident occurred on September 6 or 7, 2002, four months after the transaction at issue in this case. Gallington testified that she had not been told by the Sheriff's Department or the District Attorney's Office that her cooperation in cases such as the present might be taken into consideration. During her cross-examination,

12

Defendant asked her, "isn't it true that as an incentive - - an additional incentive - - other than twenty-five dollars to work for the police that you were to get yourself out of some trouble that you got into?" to which she replied, "No." In response to Defendant's argument on appeal that this testimony should have been admitted at trial, the State points out that the officers and Gallington all testified that her consideration for participating in the controlled buy and for testifying at trial was the pay. The State additionally notes the incidents were not connected in any way to Defendant and that to allow the expansion of La.Code Evid. art. 404 to this degree is not supported by the jurisprudence.

Louisiana Code of Evidence Article 607(D) allows the credibility of a witness to be attacked by extrinsic evidence to show the witness' bias, interest or corruption. Accordingly, we find that the trial court committed error when it refused to allow Defendant to question Gallington about the foregoing incidents. However, the error in this instance is subject to a harmless error analysis.

In *State v. Williams*, 02-1406 (La. 4/9/03), 844 So.2d 832, witness Delwin Ancar's house trailer was invaded by the defendant and two others searching for drugs and money. During Ancar's direct testimony at Williams' trial, he testified that three months prior to trial, he pled guilty to possession of cocaine and he was placed on probation. On cross-examination, counsel asked Ancar whether he was originally charged with two counts of distribution of cocaine, seeking to establish that one charge was dismissed and the other reduced as a result of the plea bargain. The State objected to any questions regarding the plea bargain and the trial court initially overruled the objection. The trial court then heard the testimony of Ancar and the

13

Assistant District Attorney who had handled Ancar's case. Each of them provided reasons why the plea bargain was entered, and both denied that it had any connection to the Williams case. After hearing these two testimonies, the trial court decided to sustain the state's objection.

The appellate court found the plea agreement bore no relation to the present case, but the supreme court disagreed:

> Although the trial court was sensitive to a defendant's Sixth Amendment right of confrontation and cross-examination, the court ultimately made the wrong decision when it restricted counsel's questioning of Ancar and thereby impaired relator's ability "to expose to the jury the facts from which [it] . . . could appropriately draw inferences relating to the reliability of the witness." *Olden v. Kentucky*, 488 U.S. 227, 109 S.Ct. 480, 483, 102 L.Ed.2d 513 (1988)(internal quotation marks and citations omitted). To the extent that exposure of a witness's motivation "is a proper and important function of the constitutionally protected right of cross-examination," *State v. Nash*, 475 So.2d 752, 755 (La.1985), this Court has held on numerous occasions that a witness's "hope or knowledge that he will receive leniency from the state is highly relevant to establish his bias or interest." *State v. Brady*, 381 So.2d 819, 822 (collecting cases); *see also State v. Bowie*, 00-3344, p. 9 (La.4/3/02), 813 So.2d 377, 385 ("A defendant's right to demonstrate facts and circumstances which might influence the witness's perceptions or color his testimony, thereby lessening the weight the fact-finder might accord his testimony, is guaranteed in both state and federal criminal proceedings and is an important function of the right to confront and cross-examine.") (citations omitted). A witness's bias or interest may arise from arrests or pending criminal charges, or the prospect of prosecution, even when he has made no agreements with the state regarding his conduct. *Brady*, 381 So.2d at 822; *see also Nash*, 475 So.2d at 755-56. Moreover, even after pending charges have been resolved, bias may arise from a witness's "vulnerable status as a probationer." *Davis v. Alaska*, 415 U.S. 308, 318, 94 S.Ct. 1105, 1111, 39 L.Ed.2d 347 (1974).

> We need not decide whether, as relator argues, the trial court usurped the jury's role as the fact-finder by denying jurors the opportunity to infer from the timing and nature of the plea bargain a connection between the narcotics prosecution and the present case. Even assuming that Ancar had no motive to protect a guilty plea premised on a specific condition (express or implied) that he would testify against

14

relator and his co-defendants, the witness may have subjectively believed that continued cooperation with the state was necessary to protect his probationary status and to forestall any chance of going to jail. It was the fear of incarceration, Ancar made clear in his testimony outside the jury's presence, that led him to accept the plea bargain although he continued to profess his innocence. At the time he entered his guilty plea, Ancar had been subpoenaed for a pre-trial hearing conducted in the present case only one week later. As relator's counsel characterized Ancar's situation, "So one week you were being prosecuted and the next week you're the witness...." Jurors knew from Ancar's direct testimony that he had pleaded guilty to possession of cocaine and had received probation. However, without the full context of the proceedings set out before them, including the terms of the plea bargain, jurors lacked any basis for assessing how intertwined the two cases may have been in Ancar's mind, how closely associated the plea bargain in one case was to his appearance as a victim/witness in the other, and how much pressure Ancar may have felt to cooperate in the prosecution of relator and his co-defendants, not only to protect his probationary status but also to distance himself from the darker implications arising out of the loss of thousands of dollars in cash from his trailer and testimony of family members that the perpetrators were looking for money and drugs only a month after he had been implicated in the cocaine sales to undercover agents.

The trial court therefore erred in precluding defense counsel from delving into the details of Ancar's prior cocaine conviction to expose for the jury's consideration the sources of possible bias or partiality of the witness. While confrontation errors are subject to harmless-error analysis, *Delaware v. Van Arsdall*, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986), we cannot say in the present case that the jury's verdict was surely unattributable to the error. *Sullivan v. Louisiana*, 508 U.S. 275, 279, 113 S.Ct. 2078, 2081, 124 L.Ed.2d 182 (1993).

*Id.* at 835-36.

In *State v. Vale*, 95-1230 (La. 1/26/96), 666 So.2d 1070, three defendants were charged together with possession of heroin with the intent to distribute as a result of a transaction that occurred in June of 1990. In January of 1991, the state dismissed the charge against defendant Bergeron in exchange for his testimony against the other two defendants. In November of 1992, Bergeron was arrested for violating La.R.S. 14:95.1. He was charged with the offense and the charge was still pending at the time

15

of the trial. Approximately two weeks after his arrest for violating La.R.S. 14:95.1,

and one day before trial, Bergeron told the state for the first time that defendant Vale

had sold him heroin in a Wal-Mart parking lot several weeks prior to the June 1990

incident. In his July 1991 statement to police that was part of his agreement with the

state, which resulted in dismissal of his charge, Bergeron had stated he did not know

whether defendant Vale was distributing drugs. The state notified the court of its

intent to introduce the evidence regarding the prior sale. At the hearing on the matter,

Bergeron stated he had forgotten about the purchase from Vale until he was urged by

the prosecutrix to remember everything he could in preparation for the upcoming trial.

At trial, when the defense attempted to cross-examine Bergeron about his pending

charge as an explanation for his recovered memory of the prior sale, the state objected.

The court ruled, "that in the absence of evidence of an explicit deal concerning the

firearms offense, Bergeron's subjective expectations concerning that charge were

irrelevant for purposes of cross-examination into his bias and interest in testifying for

the state." *Id.* at 1072. The supreme court stated:

> This court granted certiorari because the trial court's ruling, affirmed by the court of appeal, conflicted with numerous decisions by this court that to the extent exposure of a witness's motivation is a proper and important function of the constitutionally protected right of cross-examination, a witness's "hope or knowledge that he will receive leniency from the state is highly relevant to establish his bias or interest." *State v. Brady,* 381 So.2d 819, 822 (La.1980) (collecting cases); *see also State v. Nash,* 475 So.2d 752, 755-56 (La.1985). A witness's bias or interest may arise from arrests or pending criminal charges, or the prospect of prosecution, even when he has made no agreements with the state regarding his conduct. *Id.*
>
> The state now concedes the error of the trial court in sustaining its objection and of the appellate court in accepting its argument on the exclusion of the relevant evidence of bias or interest. The state, however, argues that the error was harmless.

16

*Id.*

The supreme court subsequently reversed the court of appeal and remanded the case for the court to conduct a harmless error analysis. We note that the fifth circuit found that the error was harmless on remand, *State v. Vale*, 93-895 (La.App. 5 Cir. 11/14/96), 683 So.2d 917, but the supreme court found that it was not upon further review. *State v. Vale*, 96-2953 (La. 9/19/97), 699 So.2d 876.

In *State v. Boswell*, 96-801 (La.App. 3 Cir. 2/12/97), 689 So.2d 627, the witness, a confidential informant involved in the drug transactions at issue in the case, testified that prior to the transactions, she went to police seeking help with pending arrests. In exchange for her participation and information in narcotics cases, the pending charges were to be dropped. On cross-examination, the defendant attempted to ask the witness whether she had been arrested on drug charges within two to three weeks prior to trial. The state's objection made at this point was sustained. On appeal, the state conceded that the trial court erred in sustaining the objection, citing *Vale* as support. This court agreed with the state's position and conducted a harmless error analysis.

The present case is factually similar to *Vale* and *Boswell* regarding Gallington's charge which arose after the transaction, but prior to trial. As for the first incident involving Posey, Gallington testified the time of the occurrence was in 2002, but an exact date was not given. However, the record leads us to believe that it occurred about the time she began working for the District Attorney's Office. Thus, whether this incident occurred before or after Gallington's participation in the controlled buy is not clear. She testified that she was told by officers at the Oakdale

Police Department that her actions were justified. Under these circumstances, it is difficult to determine whether the prospect of prosecution may have been a motivating factor for Gallington's participation with authorities. However, the foregoing cases allow great latitude in cross-examination on a witness' motivation for cooperation with the state. In the second instance, clearly, the charges pending against her for the incident involving Kevin Melbert may have had a bearing on the quality of her testimony.

In *Sullivan v. Louisiana*, 508 U.S. 275, 279, 113 S.Ct. 2078, 2081 (1993), the Supreme Court stated that the test for harmless error "is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in *this* trial was surely unattributable to the error." In *Boswell*, we set forth the factors to be considered in assessing whether the error was harmless:

> Confrontation errors are subject to a *Chapman* harmless error analysis. *Delaware v. Van Arsdall*, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). The correct inquiry is whether the reviewing court, assuming that the damaging potential of the cross-examination were fully realized, is nonetheless convinced that the error was harmless beyond a reasonable doubt. *Id*. at 684, 106 S.Ct. at 1438. Factors to be considered by the reviewing court include "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case." *Id*. at 684, 106 S.Ct. at 1438.

*Boswell*, 689 So.2d at 630, quoting *State v. Wille*, 559 So.2d 1321, 1332 (La.1990).

In the present case, Gallington's testimony was important to the State's case. However, her testimony was corroborated on material points by the testimony

18

of the officers, as well as the video recording of her transaction with Defendant. The existence of this video recording enhanced the strength of the State's case, which was significant. Additionally, we note that Defendant was allowed to fully cross-examine Gallington on other topics, including her personal drug use, the fact she had considered herself a drug dealer at one point, and her prior conviction in Texas for possession of cocaine and methamphetamine. Under these circumstances and considering these factors, we find that the error that occurred was harmless and that this assignment of error is likewise harmless.

## ERROR PATENT

We review all appeals for errors patent on the face of the record in accordance with La.Code Crim.P. art. 920. After reviewing the record, we find that the sentencing minutes require correction. The minutes state the sentence is twelve years without the benefit of parole, probation, or suspension of sentence, however, the transcript does not mention that the sentence was to be served without benefit of parole. Accordingly, we remand the case and order the trial court to correct the sentencing minutes to reflect the sentence imposed.

## CONCLUSION

Defendant's conviction and sentence are affirmed. However, the case is remanded to the trial court for correction of the sentencing minutes to reflect that Defendant's sentence was not imposed without benefit of parole.

**AFFIRMED AND REMANDED WITH INSTRUCTIONS.**

STATE OF LOUISIANA

VERSUS

KILEY M. WILLIAMS


THIBODEAUX, C.J., dissenting.

The trial court's refusal to allow Ms. Gallington to be questioned regarding the incidents with Leon Posey and Kevin Melbert is not harmless error. The credibility of Ms. Gallington, I believe, was the overriding factor in the jury's decision to convict the Defendant of the lesser included offense of attempted distribution of cocaine. The majority observes that the Defendant's testimony was corroborated by the existence of a video recording of Ms. Gallington's transaction with the Defendant. This video recording "enhanced the strength of the State's case." The majority goes on to say that the State's case was "significant." We must recall that the Defendant was charged initially with distribution of cocaine, yet the jury convicted him of the lesser included offense of attempted distribution of cocaine. If the State's case was as "significant" as the majority observes, it would seem reasonable to conclude that the Defendant would have been convicted of the initial charge of distribution of cocaine. Despite the existence of a video recording, the Defendant was not convicted as charged. The video showed nothing more than small objects being passed between the Defendant and Ms. Gallington. Yet, in spite of the video, the jury voted 10-2 to convict on a lesser charge; two of the jurors voted to acquit completely. The video,

thus, had little impact. The conviction by and large rested on the testimony of the confidential informant. Consequently, the fact that Ms. Gallington may have received leniency was highly relevant to establish her bias or interest. The Defendant in this case had a constitutionally protected right of cross examination of Ms. Gallington. The trial court's refusal to allow such cross examination was not harmless error, particularly in view of the verdict rendered. *See State v. Williams*, 02-1406 (La. 4/9/03), 844 So.2d 832.

For the foregoing reasons, I respectfully dissent. I would reverse the conviction of the Defendant and remand to the trial court for a new trial.