STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

04-1539

STATE OF LOUISIANA

VERSUS

DEVRIN P. DOUCETTE

**********
APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 17149-01
HONORABLE DAVID RITCHIE, DISTRICT JUDGE
**********

GLENN B. GREMILLION
JUDGE

**********

Court composed of Sylvia R. Cooks, John D. Saunders, and Glenn B. Gremillion, Judges.

AFFIRMED WITH INSTRUCTIONS.

Richard Bryant, Jr.
District Attorney
Carla S. Sigler
Asst. District Attorney
P. O. Box 3206
Lake Charles, LA 70602-3206
(337) 437-3400
Counsel for Plaintiff/Appellee
        State of Louisiana

**Mitchell P. Bergeron**
**P. O. Box 208**
**Sulphur, LA 70664-0208**
**(337) 527-9306**
**Counsel for Defendant/Appellant**
**Devrin P. Doucette**

**Devrin P. Doucette**
**Pro Se**
**400 Ramoin St., Lot #8**
**Sulphur, LA 70665**

GREMILLION, Judge.

In this case, the defendant, Devrin Doucette, appeals his conviction of operating a vehicle while intoxicated, fourth offense, in violation of La.R.S. 14:98. For the following reasons, we affirm with instructions.

## SUFFICIENCY OF EVIDENCE

Defendant argues that the evidence was insufficient to prove beyond a reasonable doubt that he was guilty of operating a vehicle while intoxicated. We will address this assignment first because should it be determined that the evidence was not sufficient, Defendant would be entitled to an acquittal and the remaining assignment of errors would be moot.

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, *rehearing denied*, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981).

State v. Williams, 03-1773, p. 1 (La.App. 3 Cir. 6/2/04), 878 So.2d 765, 766 (quoting *State v. Kennerson*, 96-1518, p. 5 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, 1371).

At the time of the offense, La.R.S. 14:98, in pertinent part, provided:

> A. (1) The crime of operating a vehicle while intoxicated is the operating of any motor vehicle, aircraft, watercraft, vessel, or other means of conveyance when:

> (a) The operator is under the influence of alcoholic beverages; or

> (b) The operator's blood alcohol concentration is 0.10 percent or more by weight based on grams of alcohol per one hundred cubic centimeters of blood.

1

Jeff Johnson, a trooper with the Louisiana State Police, testified at trial that in the early morning hours of May 20, 2000, he was called to investigate a two-car accident. Defendant was a driver of one of the vehicles. Trooper Johnson testified that Defendant told him he was one of the drivers and identified which vehicle was his. At this time, Trooper Johnson detected a strong odor of alcoholic beverage on Defendant's breath. He testified that Defendant's speech was slurred, his eyes were bloodshot, and he was swaying back and forth. Trooper Johnson said that he performed field sobriety tests on Defendant, the horizontal gaze nystagmus test, the walk and turn test, and the stand-on-one-leg test. He testified that Defendant failed each test and he made the determination that Defendant was intoxicated and placed him under arrest. Following his investigation of the accident, Trooper Johnson took Defendant back to headquarters, where he was subjected to a breathalyzer test. The result of the breathalyzer test indicated that Defendant had a .222 percent blood alcohol content.

Defendant argues that the State failed to prove that he was driving the vehicle or that medication affected his performance of the field sobriety test or the breathalyzer test. Defendant also claims that he preformed the field sobriety test while being video taped in a manner that showed no signs of intoxication.

After Trooper Johnson obtained the results of the breathalyzer test, he conducted the stand-on-one-leg and the walk and turn sobriety tests in the office, which were video taped. Our review of the video tape showed that Defendant performed without noticeable trouble and that his speech was not noticeably slurred. However, the trooper testified that it had been more than an hour from the time of the

2

first field sobriety test and the taking of the breathalyzer test. While it appeared that Defendant's performance on the in-office sobriety tests was adequate, "observations of the arresting officer may be sufficient to establish the defendant's guilt." *State v. Finch*, 31,888, p. 5 (La.App. 2 Cir. 5/5/99), 733 So.2d 716, 722. However, the most telling evidence is the breathalzyer test, which indicated that Defendant had a blood alcohol percentage of twice the legal limit at the time he performed the in-office sobriety test.

Following the in-office sobriety test, the trooper asked Defendant if he was the driver of the vehicle, to which the Defendant answered, "Yes." The trooper then asked him if he had taken any medication within the last twenty-four hours, to which he answered, "No." The trooper asked him if he had been drinking alcoholic beverages prior to the accident and he answered, "Yes."

Once again, we note that the result of the breathalyzer test was .222 percentage blood alcohol content. At the time of the incident, La.R.S. 32:662(A)(1)(c) provided that "[i]f the person had a blood alcohol concentration at that time of 0.10 percent or more by weight, it shall be presumed that the person was under the influence of alcoholic beverages."

We find the State proved beyond a reasonable doubt that Defendant was under the influence of intoxicating beverages when he was involved in a two-car accident. He admitted he was drinking prior to the accident, that he was driving the vehicle at the time of the accident, and that he was not on any medication at the time the field sobriety test or the breathalyzer test was administered. Moreover, he told the

3

trooper he had not had anything to drink following the accident. For these reasons, this assignment of error is without merit.

## MOTIONS TO QUASH PRIOR CONVICTIONS

Defendant filed a Motion to Quash the Bill of Information which alleged three prior convictions for operating a vehicle while intoxicated. Immediately following the trial court's denial of his motion to quash, Defendant filed a pre-trial supervisory writ with this court raising two assignments of error. We affirmed the trial court's ruling and denied Defendant's writ. Defendant now presents the same two assignments of error he brought to this court in his pre-trial writ. He has offered no new evidence or argument regarding the alleged errors at trial or in brief before this court.

Therefore, we are presented with the same issues and the same evidence which were before us in the pretrial writ application. In *State v. Chambers*, 99-679 (La.App. 3 Cir. 1/19/00), 758 So.2d 231, *writ denied*, 00-0551 (La. 9/22/00), 768 So.2d 600, we were presented with a similar situation. The defendant sought review of the trial court's denial of his motion to suppress both before and after his trial. On appeal, we wrote:

> A defendant may seek review of a pretrial ruling by the trial court even after the denial of a pretrial supervisory writ application seeking review of the same issue:
>
>> The prior denial of supervisory writs does not bar reconsideration of an issue on appeal, nor does it prevent the appellate panel from reaching a different conclusion. *State v. Fontenot*, 550 So.2d 179 (La.1989); *State v. Decuir*, 599 So.2d 358 (La.App. 3 Cir.1992), *writ denied*, 605 So.2d 1095 (La.1992). When a defendant does not present any additional evidence on this issue after the pre-trial ruling, the issue can be rejected on appeal. *See,*

4

> *e.g., State v. Regan*, 601 So.2d 5 (La.App. 3 Cir.1992), *writ denied*, 610 So.2d 815 (La.1993); *State v. Wright*, 564 So.2d 1269 (La.App. 4 Cir.1989). Judicial efficiency demands that this court accord great deference to its pre-trial decision unless it is apparent that the determination was patently erroneous and produced unjust results. *State v. Decuir, supra*, at 360.

*State v. Hebert*, 97-1742 (La.App. 3 Cir. 6/3/98); 716 So.2d 63, 67, *writ denied*, 98-1813 (La.11/13/98); 730 So.2d 455, *citing State v. Magee*, 93-643, p. 2 (La.App. 3 Cir. 10/5/94); 643 So.2d 497, 499.

> In the present case, the Defendant presented no additional evidence concerning the traffic stop, consent to search, and arrest. The argument presented in this appeal is nearly identical to the argument presented in the pretrial writ application. There has been no change in the law concerning traffic stops and consent to search that would alter the outcome of the previous opinion. Thus, we reject this assignment of error, finding no error in the rulings of the trial court or this court on writ application.

*Id.* at 233-34.

As we did in *Chambers*, we reject these assignments of error, finding no error in the rulings of the trial court or this court on writ application.

## MOTION TO SUPPRESS

In this assignment of error, Defendant asserts the trial court erred when it denied his motion to suppress the results of the breathalyzer test. Defendant alleges that he was not advised that he had the right to refuse to submit to chemical testing for intoxication as required by *State v. Alcazar,* 00-0536 (La. 5/15/01), 784 So.2d 1276, and La.R.S. 32:666(A).

Louisiana Revised Statutes 32:666(A), in pertinent part, provides that "a person under arrest for a violation of R.S. 14:98, R.S. 14:98.1, or other law or ordinance that prohibits operating a vehicle while intoxicated may refuse to submit to such chemical

test, after being advised of the consequences of such refusal as provided for in R.S. 32:661(C)."

Defendant argues that in *Alcazar*, the supreme court ruled that the Legislature created a statutory right in favor of a defendant to be advised that he can refuse the chemical testing. While Defendant admits that Trooper Johnson went over the Arrestee's Rights Form, Rights Relating to The Chemical Test for Intoxication with him prior to taking the breathalyzer test, he asserts that he was not told specifically that he had the right to refuse the test. Therefore, he asserts that the results of the test should have been suppressed.

At the motion to suppress hearing, Trooper Johnson testified that he went over the Arrestee's Rights Form with Defendant prior to the test and that a video tape was made of the interview with Defendant. The trial court noted that *Alcazar* was distinguishable from the present case wherein Alcazar was not read the form until after he took the breathalyzer test. In the present case, the trial court noted:

> And so I don't think this case is analogous with that at all, in that– and so, therefore, I'm going to deny the Motion to Suppress, because it does appear to me, based on the videotape, that the test – or that the form was gone over with him. There is a discussion there about the different periods of time that his license would be suspended if he refused the test.

However, in *Alcazar*, the supreme court noted:

LA.REV STAT. § 32:661(A)(1), Louisiana's implied consent statute, reads in pertinent part:

> Any person, regardless of age, who operates a motor vehicle upon the public highways of this state shall be deemed to have given consent . . . to a chemical test or tests of his blood, breath, urine, or other bodily substance for the purpose of determining the alcoholic content of his blood, and the presence of any abused substance or controlled

6

dangerous substance . . . if arrested for any offense arising out of acts alleged to have been committed while the person was driving . . . while believed to be under the influence of alcoholic beverages. . . .

The Legislature adopted the implied consent law to promote safety on Louisiana highways by imposing sanctions on drivers, such as withdrawal of driving privileges for motorists arrested for driving while intoxicated. *Price v. Dept. of Public Safety*, 580 So.2d 503 (La.App. 4th Cir.1991). However, while it seems that this statute automatically gives law enforcement officers the right to administer the test, an additional section of LA.REV.STAT. §§ 32:661 and 32:666(A) clarifies the procedures which the officer must perform before the test can be administered.

In that regard, LA.REV.STAT. § 32:661(C)(1) states in pertinent part:

When a law enforcement officer requests that a person submit to a chemical test as provided for above [in LA.REV.STAT. § 32:661(A)(1)], he shall first read to the person a standardized form approved by the Department of Public Safety and Corrections. The department is authorized to use such language in the form as it, in its sole discretion, deems proper, provided that the form does inform the person of the following:

(a) His constitutional rights under Miranda v. Arizona [, 384 U.S. 436, 86 S.Ct. 1602 (1966)].

(b) That his driving privileges can be suspended for refusing to submit to the chemical test.

(c) That his driving privileges can be suspended if he submits to the chemical test and such test results show a blood alcohol level of .10 percent or above. . . .

The Department of Public Safety and Corrections adopted the standardized form mentioned in LA.REV.STAT. § 32:661(C)(1) entitled "Rights Relating to the Chemical Test for Intoxication" and lists all of the consequences of submitting to the test.

*Id.* at 1279 (footnote omitted).

7

The form signed by Defendant lists not only all the consequences of submitting to the test, but the consequences of refusal. The form states specifically:

A. These are the CONSEQUENCES OF REFUSAL TO SUBMIT TO THE CHEMICAL TEST:

1. Your Driver's License shall be suspended for a period of 180 days if this is your first refusal, or a period of 545 days if this is your second or subsequent refusal within a five year period.

2. Evidence of your refusal to submit to the chemical test will be used against you in court.

3. If a traffic fatality has occurred or a person has been seriously injured you may not refuse the chemical test.

At the bottom of the form is a provision where the arresting officer may note that the arrestee was advised of all of the above rights, but would not sign the form for whatever reason. The State, in its response to Defendant's assignment of error, notes that the defendant's right to refuse the test is implicit within this form. We agree.

Furthermore, in *Alcazar*, the supreme court noted:

Legislation is a solemn expression of legislative will. LA. CIV.CODE art. 2; *Cat's Meow v. City of New Orleans,* 98-0601 (La.10/20/98), 720 So.2d 1186, 1198; *O'Regan v. Preferred Enterprises*, *Inc.*, 98-1602 (La.3/17/00), 758 So.2d 124, 128. As such, the choice of a person under arrest for operating a vehicle while intoxicated to refuse to submit to a chemical test is not a constitutionally protected right. Rather this refusal right is a matter of grace that the Louisiana Legislature has bestowed. *See South Dakota v. Neville*, 459 U.S. 553, 565, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983) (holding that the right to refuse a chemical test for intoxication is not one of constitutional dimension such as Miranda and evidence of refusal under the South Dakota statute may be presented in a criminal proceeding); *State v. Edwards*, 525 So.2d [308] at 313 [(La.App. 1 Cir. 1988)].

*Id.* at 1281.

Our review of the video tape shows Defendant discussing with Trooper Johnson the fact that his license would be suspended regardless of whether he refused

8

to take the test. Therefore, in the same manner that Defendant implicitly agreed to take a breathalyzer test when he drove a vehicle on public roadways, by acknowledging the consequences of refusal, he acknowledged that he understood he had a right to refuse the test. Accordingly, we find that Defendant was aware of his right to refuse and that this assignment of error lacks merit.

### ADMISSIBILITY OF CERTIFICATION DOCUMENTS

In this assignment of error, Defendant asserts that the trial court erred when it allowed the State to produce and submit into evidence at trial the Intoxilyzer 5000 Certification Card for Trooper Johnson, the Certificate of Inspection, Machine Recertification Form, Instrument #68-010773, and Intoxilyzer 5000 Certification Card for Tommy Heil. He claims that although he filed a motion for discovery and inspection, he did not receive copies of the above listed documents.

Defendant cites La.R.S. 15:432 to support his assertion that the documents should have been produced pre-trial. As argued by Defendant, La.R.S. 15:432, provides in pertinent part: "A legal presumption relieves him in whose favor it exists from the necessity of any proof; but may nonetheless be destroyed by rebutting evidence . . . that evidence under the control of a party and not produced by him was not produced because it would not have aided him." Because the above items were not provided to him in pre-trial discovery received from the State, Defendant objected to the admission of each.

There is a requirement that the proper function and operation of the intoxilyzer machine must be established before the State can use the statutory presumption of intoxication as set out in La.R.S. 32:662. *See State v. Tanner,* 457

9

So.2d 1172 (La.1984). Therefore, it appears that Defendant claims that since the State did not produce the certification documents during discovery, La.R.S.15:432 allowed him to surmise that the documents would not have been beneficial to the State's case and that he relied on that assumption to his detriment. Thus, according to Defendant, the State should not have been allowed to introduce the items.

We disagree. The State argues that La.R.S. 15:432 is inapplicable to the matter and cites *State v. McCoy*, 457 So.2d 887 (La.App. 3 Cir. 1984), wherein this court held that certificates of proper function and alcohol testing procedures do not require notice of intent to introduce them into evidence under La.R.S. 15:499. However, La.R.S. 32:665, provides that "[u]pon the request of the person who submits to a chemical test or tests at the request of a law enforcement officer, results concerning the test or tests shall be made available to him or his attorney." The State did make copies of the Intoxilyzer 5000 Breath Test Results and the Intoxilyzer 5000 Operational Check List available to Defendant when, in response to his motion for discovery and inspection, the State authorized Defendant to have access to its files.

The State, in its Answer to Defendant's Motion for Discovery and Inspection, stated that it intended to introduce a certificate of *results* of any criminalistics laboratory pursuant to La.R.S. 15:499-501, as well as "to use the testimony of the analyst at trial." Initially, as we have noted, the State did make the results of the test available to Defendant. If Defendant wanted the specific documents, it became his responsibility to request them. Further, Defendant requested "all reports, memoranda or other internal State documents made by the District Attorney or agents of the State in connection with the investigation or

10

prosecution of the case." The requested documents were not made "in connection with the investigation or prosecution of the case," but were made in the normal course of the operation and procedure of the testing equipment.

Finally, La.R.S. 15:499, et seq., is not applicable in this instance. While the statute is pertinent to evidence certified by a criminalistic laboratory and testified to by, for example, a coroner, forensic pathologist, or other persons who gather, examine and analyze physical evidence, the fact that the analyst was called to testify caused the certificate not to be prima facie proof of its contents. La.R.S. 15:500(B)(1).

In that regard, Defendant does not challenge the accuracy of the Intoxilyzer 5000 machine, the ability of the Trooper to accurately operate the machine, or the results of the testing. He argues only that the evidence of certification should not have been allowed into evidence because the State failed to produce copies of the certification during discovery. As we have stated, there is no requirement that the State produce to Defendant copies of the certifications, unless requested, in which case the State is required to make the documents available. There was no specific request for those documents by Defendant. Accordingly, the trial court did not err when it allowed the certification documents to be admitted into evidence; this assignment of error is without merit.

**ERRORS PATENT**

In accordance with La.Code Crim.P. art. 920, we review all appeals for errors patent on the face of the record. After reviewing the record, we find there is one error patent. The record does not reflect that Defendant was informed of the two-

11

year prescriptive period for filing post-conviction relief as required by La.Code Crim.P. art. 930.8. Thus, the trial court should be directed to inform Defendant of the provisions of Article 930.8 by sending appropriate written notice to him within ten days of the rendition of this opinion and to file written proof that he received the notice in the record of the proceedings.

## CONCLUSION

Defendant's conviction is affirmed. However, the trial court is directed to inform Defendant of the provisions of La.Code Crim.P. art. 930.8 by sending appropriate written notice to him within ten days of the rendition of this opinion and to file written proof that he received the notice in the record of the proceedings.

**AFFIRMED WITH INSTRUCTIONS.**