629 So.2d 1119 (1993)
STATE of Louisiana
v.
Steven D. BARKER.
No. 93-K-1230.
Supreme Court of Louisiana.
December 9, 1993.
John P. Mauffray, Jr., Jena, for applicant.
Richard P. Ieyoub, Atty. Gen., New Orleans, John R. Walters, Dist. Atty., Norris D. Jackson, Jena, for respondent.
PER CURIAM.
The defendant was tried and convicted by a jury of Operating a Vehicle While Intoxicated, third offense, in violation of La.R.S. 14:98. The Third Circuit Court of Appeal affirmed his conviction and sentence of fourteen months in jail, six without benefit of parole, in an unpublished opinion. 617 So.2d 995 (La.App.1993). We granted the defendant's application for supervisory review, 623 So.2d 1287 (La.1993), to consider his arguments that the trial court erred in admitting evidence of a blood alcohol test result from an Intoxilyzer 5000 machine based on a "deficient sample," and that error was not harmless beyond a reasonable doubt. We now reverse.
Police Officer John Scott conducted the Intoxilyzer test at approximately 2:15 a.m., on the morning of April 13, 1991, half an hour after arresting the defendant on the *1120 Loop Road outside Olla, Louisiana. The officer had been certified in October of 1989 to operate the Intoxilyzer 5000 and the particular machine had last been inspected on March 13, 1991, a month before the defendant's arrest. In describing the operation of the machine, Scott testified that "[y]ou just press the start button.... It goes through a process where it checks itself out and then you have [the suspect] blow into the machine." The machine provides a progressively higher visual readout as it analyzes the breath sample and "once he peaks the machine locks in." In this instance, however, the defendant failed to "give a sufficient sample for the machine to lock in ...," and the Intoxilyzer ultimately did not print out a final blood alcohol analysis. Nevertheless, Scott obtained a visual reading of .289 percent, well above the presumptive level of intoxication, 0.10 percent, established in La.R.S. 32:662. Scott testified that he had never observed a higher peak reading on the Intoxilyzer 5000 than the machine ultimately printed out.
The trial court agreed with defense counsel that the evidence was not "admissible to establish the statutory presumption...." Nevertheless, the court overruled counsel's objection to Scott's testimony and charged jurors at the close of the case that while evidence of the incomplete test could not support a presumption of intoxication, it "should be treated as any other evidence and evaluated by you ... in accord with these instructions."
In criminal prosecutions relying on the statutory presumption of intoxication arising from a chemical analysis of blood under La.R.S. 32:662-63, this Court has "repeatedly recognized the importance of establishing safeguards to guarantee the accuracy of [the] chemical tests...." State v. Rowell, 517 So.2d 799, 800 (La.1988). This Court has also recognized, however, that the state may present evidence of chemical blood analysis not conducted in strict conformity with those requirements if it chooses not to rely on the statutory presumption of intoxication. State v. Honeyman, 560 So.2d 825 (La.1990); State v. McElroy, 553 So.2d 456 (La.1989). The state may therefore "endeavor to prove that a defendant was guilty of driving while intoxicated, and, in the process, attempt to use all admissible evidence, including the hospital record, the testimony of the technologist performing the blood alcohol test, and expert testimony concerning the likely effect upon an individual of a given blood alcohol level." State v. McElroy, supra, 553 So.2d at 458; see also State v. Jones, 316 So.2d 100, 105 (La.1975). The state must, however, demonstrate that "the reliability of the blood alcohol test satisfies due process and fairness." State v. Honeyman, supra, 560 So.2d at 829; State v. McElroy, supra, 553 So.2d at 458, n. 1.
In this case, Scott could testify as any other witness that, on the basis of his two-year experience with the Intoxilyzer 5000 machine, he had never personally seen a printed result lower than the peak visual readouts he observed as the machine tested breath samples. La.C.Evid. art. 701. We need not decide, however, whether that experience provided a reliable empirical basis for the inference that if the defendant had given an adequate sample sufficient to test deep lung air, the final result would not have varied significantly from his peak visual readout. See State v. Gibson, 515 So.2d 556 (La.App. 1st Cir.1987); State v. Kieley, 413 N.W.2d 886 (Minn.App.1987); see also 3 R.E. Erwin, Defense of Drunk Driving Cases, § 24A.12 (3rd ed. 1978). In this case, the state did not, as it did in Honeyman and McElroy, present expert testimony from Scott or anyone else regarding the behavioral changes caused by a given blood alcohol level. The prosecutor simply reminded jurors in closing argument that the machine and its operator had been certified by the state and that a .289 grams percent blood alcohol level was "almost three times the level that says you're drunk." The trial court had previously informed jurors that a violation of La.R.S. 14:98 occurs not only when the operator of the vehicle "is under the influence of alcoholic beverages," but also when "the operator's blood alcohol is 0.10 percent or more by weight based on grams of alcohol per one hundred cubic centimeters of blood." In its general charge to the jury, the court again referred to the 0.10 percent figure even as it *1121 cautioned jurors against applying the legal presumption of intoxication.
Despite its disclaimers, the state relied on the jurors' knowledge of the statutory presumption to give the defendant's preliminary Intoxilyzer readout its only evidentiary significance. Whatever probative value the readout may have had on the question of whether the defendant operated a vehicle while under the influence of alcoholic beverages was far outweighed by the danger of juror confusion of the issues brought about by the continued references to the 0.10 per cent level, and by the risk that jurors could not follow the court's instructions to treat Scott's testimony regarding the Intoxilyzer test as any other evidence. La.C.Evid. Art. 403. The state's use of the deficient sample readout did not satisfy the requirements of due process and fairness we established in Honeyman and McElroy, and the trial court should have excluded the evidence.
The error in this case was not harmless beyond a reasonable doubt. Scott testified that the defendant appeared intoxicated and performed poorly on a field sobriety test, and the defendant claimed justification as his principal defense at trial. Nevertheless, the defendant did not concede that he was intoxicated at the time Scott placed him under arrest. Our prior decisions have recognized that disproportionate influence chemical tests of blood alcohol may have with jurors and have sought to regulate them accordingly. State v. Rowell, supra. Given the emphasis placed by the prosecutor on the relationship of the defendant's blood alcohol level and the presumption of intoxication, we cannot say that "the guilty verdict actually rendered in this trial was surely unattributable to the error." Sullivan v. Louisiana, ___ U.S. ___, ___, 113 S.Ct. 2078, 2080, 124 L.Ed.2d 182 (1993) [emphasis in the original]; State v. Gibson, 391 So.2d 421 (La.1980).
The defendant's conviction and sentence are therefore reversed and this case is remanded to the district court for further proceedings in accord with the law.
CONVICTION AND SENTENCE REVERSED; CASE REMANDED.
ORTIQUE, J., not on panel.