784 So.2d 1276 (2001)
STATE of Louisiana
v.
Carl E. ALCAZAR, III.
No. 2000-KK-0536.
Supreme Court of Louisiana.
May 15, 2001.
*1277 Keith R. Credo, Metairie, Counsel for Applicant.
Richard P. Ieyoub, Attorney General, Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Churita H. Hansell, Gretna, Counsel for Respondent.
KNOLL, Justice.[*]
This writ concerns whether compliance with LA.REV.STAT. §§ 32:661(C)(1) and 32:666(A), in particular the requirement that prior to testing the officer read the suspect under arrest for driving while intoxicated his right to refuse to take a chemical test, e.g., the Intoxilyzer 5000 test, is a necessary prerequisite for the admissibility of the test results.[1] We find that because the Legislature created a statutory right in favor of defendant in LA.REV.STAT. §§ 32:661(C)(1) and 32:666(A) to be advised that he can refuse chemical testing, the trial court properly granted defendant's motion to suppress the results of the Intoxilyzer test. Accordingly, we reverse the appellate court, and reinstate the trial court judgment.

FACTS
On the morning of May 31, 1998, the defendant, Carl E. Alcazar, III ("Alcazar"), was arrested on the charge of driving while intoxicated, a violation of LA.REV.STAT. § 14:98. State Trooper Greg Marchand ("Trooper Marchand") stopped Alcazar after the trooper observed Alcazar make a right turn from the center lane of a three-lane highway. After the stop, Trooper Marchand noticed that Alcazar's speech was slurred, that he could not *1278 maintain his balance, and that he smelled of alcohol. The trooper conducted a field sobriety test on which Alcazar performed very poorly. Consequently, Trooper Marchand placed Alcazar under arrest, read him the Miranda rights, and took him to police lock-up.
After arriving at lock-up, Trooper Marchand required Alcazar to take a breathalyzer test. The time that the Intoxilyzer 5000 test was administered according to the internal clock of the machine was 3:20 a.m. However, the police report indicated that Trooper Marchand read Alcazar his statutory right to refuse to take the test at 3:22 a.m., two minutes after the machine indicated the test had been administered. The test results indicated that Alcazar's blood-alcohol level was .167 percent, a figure far above the maximum set out in LA.REV.STAT. § 14:98 of .10 percent.
Alcazar filed a motion to suppress the results of the blood-alcohol test on the ground that the breathalyzer test was administered before the trooper read his statutory right to refuse to take the test. After hearing the motion, the trial court made a factual determination that the breathalyzer test was administered before the trooper read Alcazar his refusal rights. Accordingly, the trial court held that the arresting officer's failure to follow the statutorily mandated procedure provided in LA.REV.STAT. § 32:661(C)(1) and 32:666(A) rendered the results of the test inadmissible. The court of appeal reversed, concluding that the arresting officer had probable cause to stop defendant and, therefore, did not infringe upon Alcazar's right against self-incrimination by subjecting him to the Intoxilyzer test after reading him the Miranda rights, but prior to reading him his right to refuse to take the test. We granted Alcazar's writ application to determine which of the lower courts properly resolved this issue. State v. Alcazar, 00-0536 (La.1/12/01), 778 So.2d 1148.

ANALYSIS
Alcazar moved to suppress the evidence of the Intoxilyzer test results on the basis that he was required to submit to the test before being read his rights concerning the test and without being told that he had the right to refuse the test. Although the trial court agreed with Alcazar, the appellate court adopted the State's argument and reversed, finding that the gathering of physical evidence for scientific testing does not infringe upon the right against self-incrimination; therefore, any failure to advise the defendant of his rights and options before being given the Intoxilyzer test did not mandate suppression of the results.
In this case, we are squarely faced with the question of whether the trooper's failure to read Alcazar the required rights specified in LA.REV.STAT. § 32:661(C)(1) prior to conducting the test renders the results of the test inadmissible.[2]
*1279 LA.REV.STAT. § 32:661(A)(1), Louisiana's implied consent statute, reads in pertinent part:
Any person, regardless of age, who operates a motor vehicle upon the public highways of this state shall be deemed to have given consent, ..., to a chemical test or tests of his blood, breath, urine, or other bodily substance for the purpose of determining the alcoholic content of his blood, and the presence of any abused substance or controlled dangerous substance ... if arrested for any offense arising out of acts alleged to have been committed while the person was driving ... while believed to be under the influence of alcoholic beverages....
The Legislature adopted the implied consent law to promote safety on Louisiana highways by imposing sanctions on drivers, such as withdrawal of driving privileges for motorists arrested for driving while intoxicated. Price v. Dept. of Public Safety, 580 So.2d 503 (La.App. 4th Cir. 1991). However, while it seems that this statute automatically gives law enforcement officers the right to administer the test, an additional section of LA.REV.STAT. §§ 32:661 and 32:666(A) clarifies the procedures which the officer must perform before the test can be administered.
In that regard, LA.REV.STAT. § 32:661(C)(1) states in pertinent part:
When a law enforcement officer requests that a person submit to a chemical test as provided for above [in LA.REV. STAT. § 32:661(A)(1) ], he shall first read to the person a standardized form approved by the Department of Public Safety and Corrections. The department is authorized to use such language in the form as it, in its sole discretion, deems proper, provided that the form does inform the person of the following:
(a) His constitutional rights under Miranda v. Arizona.
(b) That his driving privileges can be suspended for refusing to submit to the chemical test.
(c) That his driving privileges can be suspended if he submits to the chemical test and such test results show a blood alcohol level of .10 percent or above....[3]
The Department of Public Safety and Corrections adopted the standardized form mentioned in LA.REV.STAT. § 32:661(C)(1) entitled "Rights Relating to the Chemical Test for Intoxication" and lists all of the consequences of submitting to the test.
In addition, La.Rev.Stat. § 32:666(A) provides in pertinent part:
[A] person under arrest for a violation of R.S. 14:98, R.S. 14:98.1, or other law or ordinance that prohibits operating a vehicle while intoxicated may refuse to submit to such chemical test, after being advised of the consequences of such refusal as provided for in R.S. 32:661(C).
As applicable to the present case, the form further gives the individual under arrest the option of refusing to sign the form and take the test.
From the outset, we find that State v. McGuire, 493 So.2d 559 (La.1986) and *1280 State v. Barker, 629 So.2d 1119 (La.1993), the two Louisiana cases that the court of appeal heavily relied upon, are distinguishable. In McGuire, we held that a warning which informed the defendant that one of the consequences of submission to the test was that the results of .10 or higher would be used against him in court was sufficient to inform defendant that a conclusive presumption of intoxication arose from such results. In that case, McGuire was found at the scene of an accident, administered a field sobriety test, and then placed under arrest and brought to the police station. Before administering the breathalyzer test, the police officer read McGuire the standard rights form related to a chemical test and then administered the test. The defendant alleged that despite the warning she received prior to taking the test, she was not adequately informed that results of .10 or higher would establish "a conclusive presumption of intoxication." Accordingly, we stated:
We do not think that La. R.S. 32:661(D) requires a law enforcement officer to embark upon a discussion of the legal consequences of a blood alcohol content of .10 percent or above other than to advise defendant of those consequences given in the instant case as set forth above. Hence, we conclude that defendant was adequately advised of the consequences of submitting to a blood alcohol test and registering a blood alcohol level of .10 percent or above.
McGuire, 493 So.2d at 562.
In stark contrast to McGuire where it is clear that the police officer provided the warnings required in LA.REV.STAT. § 32:661(C)(1), here Alcazar received none of the statutorily mandated warnings prior to taking the breathalyzer test. Thus, McGuire is factually distinguishable.
The appellate court also relied on dicta in McGuire in which we stated:
The court of appeal further erred in finding that the test results were inadmissible. The sanction of inadmissibility is neither statutorily nor constitutionally compelled. The version of La. R.S. 32:661(C) relied upon in State v. Downer, 460 So.2d 1184 (La.App. 2d Cir.1984) was changed by La. Acts 1984, No. 409, § 1 (effective September 3, 1984) to delete the sanction of inadmissibility from the statute. This amended version of the statute was applicable in the instant case. The obvious legislative intent in deleting the provision was to do away with the sanction of inadmissibility where advisement procedures are not adequate. Hence, the sanction of inadmissibility would not be compelled by La. R.S. 32:661(C). Moreover, we have previously held that there is no infringement upon the right against self-incrimination involved in subjecting persons suspected of driving while intoxicated to the gathering of physical evidence such as a blood sample for scientific testing and no constitutional requirement that such persons be advised of the consequences of adverse test results. State v. Allen, 440 So.2d 1330 (La.1983); State v. Spence, 418 So.2d 583 (La.1982); see also Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966).
McGuire, 493 So.2d at 563.
Although the appellate court properly cited Schmerber in the present case for the proposition that there is no infringement upon the right against self-incrimination involved in subjecting a person suspected of driving while intoxicated to the gathering of a breath sample for scientific testing and no constitutional requirement that such person be advised of the consequences of an adverse test result, the appellate court failed to appreciate that the trooper did not inform Alcazar of any of his rights that the Legislature specified in *1281 LA.REV.STAT. § 32:661(C)(1) prior to taking the breathalyzer test. To this end, it appears that the Legislature has created a very limited exception in LA.REV.STAT. §§ 32:661(C)(1) and 32:666(A) which allows a defendant to refuse to allow the State to gather physical evidence against him.[4]Compare Schmerber, 384 U.S. at 757, 86 S.Ct. 1826 (probable cause and exigent circumstances justified search for evidence in defendant's blood without a warrant); National Treasury Employees Union v. Von Raab, 489 U.S. 656, 109 S.Ct. 1384, 103 L.Ed.2d 685 (1989) (suspicion less drug testing of Customs Service employees seeking promotion or transfer to positions involving blocking illegal drugs or requiring carrying firearms is a search under the Fourth Amendment, but is reasonable in light of compelling governmental interests); Skinner v. Railway Labor Executives' Ass'n., 489 U.S. 602, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989) (drug testing of blood and urine or railroad employees involved in certain train accidents is a permissible Fourth Amendment search because compelling governmental interests outweigh limited intrusion on privacy in a regulated industry, and testing in absence of individualized suspicion and with limited discretion is reasonable.).
The court of appeal further improperly relied on Barker for the proposition that the State may utilize evidence of an Intoxilyzer test result which was not conducted in strict compliance with the statutory requirements as long as the State does not rely upon the statutory presumption of intoxication. Id. at 1120. Unlike the present case, there was no showing in Barker that the defendant was not read the specific warnings provided in LA.REV.STAT. § 32:661(C)(1) and 32:666(A).
Thus, we are faced with a situation where the Legislature has mandated in LA.REV.STAT. §§ 32:661(C)(1) and 32:666(A) that a law enforcement officer must provide information to the arrestee of his right to refuse the test, but has chosen not to delineate the consequences of the officer's failure to observe the legislative dictate.[5]
Legislation is a solemn expression of legislative will. LA. CIV.CODE art. 2; Cat's Meow v. City of New Orleans, 98-0601 (La.10/20/98), 720 So.2d 1186, 1198; O'Regan v. Preferred Enterprises, Inc., 98-1602 (La.3/17/00), 758 So.2d 124, 128. As such, the choice of a person under arrest for operating a vehicle while intoxicated to refuse to submit to a chemical test is not a constitutionally protected right. Rather this refusal right is a matter of grace that the Louisiana Legislature has bestowed. See South Dakota v. Neville, 459 U.S. 553, 565, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983) (holding that the right to refuse a chemical test for intoxication is not one of constitutional dimension such as Miranda and evidence of refusal under the South Dakota statute may be presented in a criminal proceeding); State v. Edwards, 525 So.2d at 313. See also supra p. 1281.
We find that any holding which allows the test results to be admitted into evidence when a defendant has not first been advised that he had a right to refuse to the test, effectively renders LA.REV.STAT. §§ 32:661(C)(1) and 32:666(A) meaningless. *1282 Exclusion of the test results, whether or not mandated in the statute, is the only means to assure compliance with the specifically crafted legislative provision which allows a defendant to refuse the test. Whether or not the police conduct is intentional or not, this right of refusal would be hollow if we were to allow the introduction of the test results even if the police advise the defendant of his right to refuse after the test has been administered.
In the present case, Alcazar employed the motion to suppress as the procedural vehicle to exclude the results of the test. We find that procedure consistent with our holding in State v. Tanner, 457 So.2d 1172 (La.1984), an analogous case in which a defendant sought to raise an objection to the admissibility of chemical test results by way of a motion to suppress. Id. at 1174. LA.CODE CRIM. PROC. art. 703 provides that a "defendant adversely affected may move to suppress any evidence from use at the trial on the merits on the ground that it was unconstitutionally obtained." This Court examined that article and determined that "a literal reading of art. 703 would seem to exclude the use of a motion to suppress to test admissibility" because the evidence in the case, the test results, were constitutionally seized under Schmerber. This Court then examined LA.CODE CRIM. PROC. art. 3 which provides that "[w]here no procedure is specifically described by this Code or by statute, the court may proceed in a manner consistent with the spirit and provisions of this Code and other applicable statutory and constitutional provisions." (emphasis added). Based upon that authority, this Court concluded that the use of the motion to suppress, which requires inadmissibility as the remedy, to question the admissibility of chemical test results was "consistent with the spirit and the provisions of this Code." Tanner, 457 So.2d at 1174.
Like Tanner, Alcazar's motion to suppress the results of his Intoxilyzer test is seemingly inappropriate as this remedy was not provided for in LA.REV.STAT. § 32:661(C)(1) and under the mandate of Schmerber, the test results were not unconstitutionally acquired. Under our authority as provided in LA.CODE CRIM. PROC. art. 3, we find that the appropriate remedy in this situation is the use of a motion to suppress because of the absence of specific legislative procedural rules.
In the present case, we find that the failure of the officer to advise Alcazar of his statutory right to refuse the chemical test, though not of constitutional magnitude, nonetheless constitutes a failure to follow a direct mandate of the Legislature. As a result of this failure to implement LA.REV.STAT. §§ 32:661(C)(1) and 32:666(A), we find that the trial court properly suppressed the test results.[6]
For the foregoing reasons, the judgment of the court of appeal is reversed and set aside. The judgment of the trial court is reinstated. This matter is remanded to the trial court for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
VICTORY, J., dissents and assigns reasons.
TRAYLOR, J., dissents for reasons assigned by VICTORY, J.
VICTORY, J., dissenting.[*]
Carl Alcazar was Mirandized and then arrested for driving while intoxicated after *1283 being observed driving erratically and after he performed poorly on a field sobriety test. No one disputes that there was probable cause for his arrest. At the police station he was administered a breathalyzer test. The test results confirmed that his blood alcohol level exceeded the legal limits. Defendant filed a motion to suppress the test results, arguing that application of the exclusionary rule is the proper remedy in this case for failure of the police to comply with La. R.S. 32:661(C)(1) and 32:666(A) by not advising defendant, prior to the test, of his right to refuse the test, and the consequences of taking or refusing the test. The administering officer testified that he did give the statutory advices in advance of the test. However, the trial judge suppressed the evidence without issuing reasons, evidently finding that the statutory advices were not given before the test.
It is clear that the conduct of the police did not violate defendant's state or federal constitutional right against self-incrimination. Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966); State v. Allen, 440 So.2d 1330 (La.1983). Moreover, the majority agrees that the right to refuse the breath test was not protected by a state or federal constitutional right to be free from unreasonable search and seizure. South Dakota v. Neville, 459 U.S. 553, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983): State v. Edwards, 525 So.2d 308 (La.App. 1st Cir.1988). In this case, there has been no violation whatsoever of defendant's constitutional rights by the administration of the breath test. Nor is there any violation of his constitutional rights by use of the evidence at trial.
The majority acknowledges that a defendant's right to refuse a breath test is purely a "matter of grace that the legislature has bestowed." It then leaps to the conclusion that the only way to effectively enforce that "grace" is to exclude the results of the test when defendant is not first advised of the statutory right to refuse the test and the attendant consequences of refusal. I do not agree.
The invocation of the exclusionary rule is an extreme remedy, the use of which is being increasingly circumscribed even in cases that involve constitutionally protected rights. It is a judicially created means of deterring illegal searches and seizures. However, it applies only in cases where its deterrence benefit outweighs its substantial social costs. It does not prohibit the use of illegally seized evidence in all cases or against all persons, even where constitutional rights have been violated. See e.g., Pennsylvania Bd. of Probation and Parole v. Scott, 524 U.S. 357, 118 S.Ct. 2014, 141 L.Ed.2d 344 (1998); Ohio v. Robinette, 519 U.S. 33, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996); Arizona v. Evans, 514 U.S. 1, 115 S.Ct. 1185, 131 L.Ed.2d 34 (1995); United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984); Stone v. Powell, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976).
As the United States Supreme Court explained in Scott, supra:
Because the exclusionary rule precludes consideration of reliable probative evidence, it imposes significant costs: it undeniably detracts from the truth finding process and allows many who would otherwise be incarcerated to escape the consequences of their actions [citation omitted]. Although we have held these costs to be worth bearing in certain circumstances, our cases have repeatedly emphasized that the rule's "costly toll" upon truth-seeking and law enforcement objectives presents a high obstacle for those urging application of this rule.
Id. at 365, 118 S.Ct. 2014.
The United States Supreme court has made it clear that even in the case of constitutional violations, the exclusionary *1284 rule will not be applied in the absence of a strong showing that its deterrence value and the rights to be protected outweigh the social value of admitting reliable and probative evidence. In this case there has been no showing that the statute in question is not followed in the normal course of police investigation of those suspected of driving while intoxicated. And there is no evidence that the administering officer in this particular case was in bad faith or intentionally failed to advise defendant of his rights. There is no record to support a conclusion that the application of the exclusionary rule is needed to deter police conduct. Nor is there any reason to believe that application of the rule would substantially alter police conduct in the future, particularly since the police are already motivated to follow the statute in order to obtain the benefit of the statutory presumptions afforded when it is followed.
We are not dealing here with a core constitutional right of the defendant; we are only dealing with a statutory right granted by the legislature. The legislature itself specifically rejected use of the exclusionary rule as a means to enforce the statute when it amended La. 32:661 in 1984 to delete the sanction of inadmissibility that had previously been in the statute. The legislature has acted to remove the penalty of exclusion of evidence, clearly indicating its intent that such an extreme penalty is not warranted. Its judgment that the deterrence value of the exclusionary rule is outweighed by the social cost of excluding otherwise legally obtained probative evidence should be honored.
Denial of defendant's motion to suppress the evidence does not mean that the statute will be violated with impunity. As previously noted, when officers follow the guidelines in the statute, the state is entitled to certain valuable presumptions at trial, including the presumption that a defendant who tests at a certain level is legally intoxicated. When the state does not follow the statute, it does not get the benefit of the presumption and must bear a more difficult evidentiary burden. Thus, violation of the statute carries with it self-executing negative consequences. In addition, citizens whose statutory rights have been violated may complain to the authorities, request discipline of the offending officers, exercise their powers at the ballot box, and in some instances may have civil remedies.
Since use of the exclusionary rule to enforce compliance with La. R.S. 32:661 et seq. has been rejected by the legislature and is unwarranted, I respectfully dissent.
NOTES
[*] Philip Ciaccio, Justice Pro Tempore, sitting for Associate Justice Harry T. Lemmon.
[1] We observe that the right of refusal does not extend to a person under arrest for a violation of LA.REV.STAT. § 14:98, R.S. 14:98.1, or any other like law "wherein a traffic fatality has occurred or a person has sustained serious bodily injury." LA.REV.STAT. § 32:666(A). In the present case, neither a fatality nor serious bodily injury was involved. Thus, the defendant had a right to refuse testing.
[2] Where there is conflicting factual testimony presented to the trial court, we must not disturb the trier of fact's factual determinations unless it is shown that the great discretion of the trial court should be reversed because its assessment of credibility is clearly contrary to the evidence. State v. Cobbs, 350 So.2d 168 (La.1977). In the present case, the trial court determined that the trooper failed to read Alcazar his rights prior to administering the test. This determination is fully supported by the evidence that the internal clock of Intoxilyzer 5000 showed that the test was given prior to the time that the trooper advised Alcazar of his right to refuse the test. Because no evidence has been shown that this factual determination of the trial court is clearly contrary to the evidence, we will assume that the Intoxilyzer test was administered at 3:20 a.m. and the trooper read Alcazar his rights to refuse the test at 3:22 a.m.
[3] Although the implied consent statute, LA. REV.STAT. § 32:661 was enacted in 1968, in 1972 the Legislature added subsection (C) to provide for the requirement that law enforcement officials must inform the person of the consequences of refusal to submit to the test. Also that section included a sanction of inadmissibility if the procedures were not complied with. By Acts 1983, No. 632, § 1, effective January 1, 1984, the Legislature amended subsection (C) to include the requirement that the law enforcement officer must inform the person of the consequences where the test is administered and the results are positive for the requisite blood-alcohol level. However, Acts 1984, No. 409, § 1, effective September 3, 1984, deleted the sanction of inadmissibility if the procedures were not followed.
[4] Notwithstanding, a defendant's exercise of that right to refuse the chemical test is not without its consequences. As provided in LA. REV.STAT. § 32:666, the person who refuses the test has his license seized and evidence of his refusal to take the test is admissible in any criminal action or proceeding; if the person refusing the test has no license or permit to operate a motor vehicle, the "department shall deny the issuance of a license or permit to such person for a period of six months after the date of the alleged violation." LA. REV.STAT. § 32:666(A)(3).
[5] See supra note 3.
[6] Although the test results are inadmissible, we remand this matter for further proceedings. The observations of an arresting officer may be sufficient to establish guilt. Intoxication is an observable condition about which a witness may testify. State v. Allen, 440 So.2d 1330 (La.1983).
[*] Philip Ciaccio, Justice Pro Tempore, sitting for Associate Justice Harry T. Lemmon.