Judgment rendered August 28, 2024.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C. Cr. P.

No. 55,615-KW

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Respondent

versus

JASON HOYT KILPATRICK                        Applicant

* * * * *

On Application for Writs from the
Twenty-Sixth Judicial District Court for the
Parish of Bossier, Louisiana
Trial Court No. 244,163

Honorable R. Lane Pittard, Judge

* * * * *

WHITLEY R. GRAVES                    Counsel for Applicant

J. SCHUYLER MARVIN                   Counsel for Respondent
District Attorney

ROBERT RANDALL SMITH
JESSICA GREEN DAVIS
AMANDA BROTHERTON-TODD
Assistant District Attorneys

* * * * *

Before PITMAN, STEPHENS, and THOMPSON, JJ.

STEPHENS, J., dissents with written reasons.

**THOMPSON, J.**

A driver with a commercial driver's license was unsuccessful in having the results of his breathalyzer test suppressed by the trial court for an omission of the arresting officer to read the entirety of the rights form promulgated by the Department of Public Safety and Corrections. Finding only a *de minimis* exclusion that does not justify the suppression of the results, we affirm the trial court's denial of the motion to suppress.

## FACTS AND PROCEDURAL HISTORY

On September 6, 2022, Kilpatrick was charged via bill of information with one count of operating a vehicle while intoxicated (first offense) in violation of La. R.S. 14:98.1, following a single-vehicle accident in Bossier Parish on July 17, 2022, in which he was the only party injured. At the time of the accident, Kilpatrick was driving a personal vehicle, but held a Class A Commercial Driver's License ("CDL") and was employed as a professional truck driver. Following the accident, Kilpatrick was determined to be intoxicated and arrested at the scene by Bossier Parish Sheriff's Deputy Deanna McLaughlin. Kilpatrick was then taken to the Bossier Parish Sheriff's Office for the purpose of chemical testing for alcohol and/or controlled dangerous substances. At the sheriff's office, Kilpatrick provided a breath sample pursuant to his arrest.

Prior to Kilpatrick submitting to the breathalyzer, Deputy McLaughlin read portions of the DPSSP 6621 form, entitled Arrestee's Rights Form-Rights Relating to the Chemical Test for Intoxication ("the form"), created by the Louisiana Department of Public Safety and Corrections ("DPSC"), as required in La. R.S. 32:661.

**OFFICE OF STATE POLICE**
**ARRESTEE'S RIGHTS FORM**
**RIGHTS RELATING TO THE CHEMICAL TEST FOR INTOXICATION**

You are under arrest by a law enforcement officer who has reasonable grounds to believe that you were operating a vehicle or watercraft while intoxicated or you were involved in a violation wherein a fatality or a person has sustained serious bodily injury and the officer has probable cause to believe you were operating a vehicle while intoxicated. The law now requires you to submit to a chemical test or tests to determine the alcoholic content and/or presence of any abused or illegal controlled dangerous substance in your blood, breath, urine or other bodily substance.

These are the law enforcement officers involved in the traffic stop, detention, investigation, and arrest:

| Name | Badge # | Agency | Name | Badge # | Agency |
|---|---|---|---|---|---|
| Name | Badge # | Agency | Name | Badge # | Agency |

A. These are the CONSEQUENCES OF REFUSAL TO SUBMIT TO THE CHEMICAL TEST. YOU HAVE THE RIGHT TO REFUSE THE CHEMICAL TEST IF YOU WERE NOT INVOLVED IN A CRASH WHERE A FATALITY OR SERIOUS BODILY INJURY OCCURRED:

1. Your driving privileges shall be suspended for a period of one year if this is your first refusal, or a period of two years if this is your second or subsequent refusal within a ten year period.
2. If you have refused to submit to the chemical test on two previous and separate occasions, a refusal to this test is a crime under the provisions of R.S.14:98.7 and the penalties are the same as the penalties for first conviction of driving while intoxicated. For purposes of this provision, a chemical test shall not include a blood test.
3. Evidence of your refusal to submit to the chemical test will be used against you in court.

**[READ IF APPLICABLE] FATALITY/SERIOUS BODILY INJURY**
If a traffic fatality has occurred or a person has been seriously injured you may not refuse the chemical test. Refusal to submit to the chemical test in any case wherein a traffic fatality has occurred or a person has sustained serious bodily injury as a result of a crash, your driving privileges shall be suspended for one year without benefit of eligibility for a hardship, in the event that a fatality occurred or a person has sustained serious bodily injury as a result of an accident and the person's intoxication is determined by a trier of fact to be the contributing factor of the fatality or serious bodily injury. Anyone who refuses to submit to the test shall be fined not less than three hundred dollars and not more than one thousand dollars and imprisoned for not less than ten days and not more than six months. For purposes of this provision, a chemical test shall not include a blood test.

B. These are the CONSEQUENCES IF THE TEST IS CONDUCTED and the results indicated a blood alcohol concentration of .08 percent or above by weight of alcohol in the blood.

1. The results of the test will be used against you at your trial and will be conclusive evidence that you are intoxicated.
2. Your driving privileges shall be suspended for a period of 90 days if this is your first submission to a test, or one year if this is your second or subsequent submission to a test within the past five years.
3. If you submit to the chemical test and the results indicate a blood alcohol concentration of .15 percent or above by weight of alcohol in the blood you will be required to serve at least 48 hours of the sentence imposed upon first conviction and 96 hours on the second conviction.
4. If you submit to the chemical test and the results indicate a blood alcohol concentration of .20 percent or more your driver's license shall be suspended two years for the first offense and four years for the second.

**[READ IF APPLICABLE] PERSONS UNDER THE AGE OF 21**
These are the CONSEQUENCES IF THE TEST IS CONDUCTED and the results indicated a blood alcohol concentration of .02 percent or above but less than .20 percent by weight of alcohol in the blood.
1. The result will be used against you at your trial and will be used as evidence that you are intoxicated.
2. Your driving privileges shall be suspended for a period of 180 days if this is your first or subsequent submission to a test.

**[READ IF APPLICABLE] IF YOU WERE OPERATING A COMMERCIAL MOTOR VEHICLE OR HAVE A CLASS A, B, OR C COMMERCIAL DRIVER'S LICENSE**
In addition to the above applicable sections, these are the CONSEQUENCES IF YOU WERE OPERATING A COMMERCIAL OR NON-COMMERCIAL VEHICLE.

1. Your Commercial Driver's License shall be disqualified for 1 year if, for the first time reported on your driving record, you refuse the test, or submit to the test and the results indicate a blood alcohol concentration of .04 percent or above by weight of alcohol in the blood while operating a commercial motor vehicle or .08 percent or above while operating a non-commercial vehicle.
2. If the vehicle you were operating was transporting any hazardous materials as defined by law, your Commercial Driver's license shall be disqualified for 3 years if you refuse the test or submit to the test, and the results indicate a blood alcohol concentration of .04 percent or above by weight of alcohol in the blood.
3. Your Commercial Drivers License shall be disqualified for life if for the second time reported on your driving record if you were operating a commercial motor vehicle, you refuse the test, or submit to the test and the results indicate a blood alcohol concentration of .04 percent or above by weight of alcohol in the blood while operating a commercial motor vehicle or .08 percent or above while operating a non-commercial vehicle.
4. If you refuse to submit to an approved chemical test or tests for intoxication while operating a commercial or non-commercial motor vehicle upon the public highways of this state while under the influence of either alcoholic beverages or any abused substance or controlled dangerous substance as set forth in R.S. 40:964, or you are convicted of driving under the influence of either alcoholic beverages or any abused substance or controlled dangerous substance as set forth in R.S. 40:964, your "S" endorsement for the operation of a school bus shall be suspended for a period of 10 years.

C. You have the OPTION OF AN ADDITIONAL TEST. You will be allowed to call a physician or other qualified person of your choice to give you an additional test at your own expense, if you so desire.

D. These are your CONSTITUTIONAL RIGHTS:
1. You have the right to remain silent; anything you say may be used against you in a court of law.
2. You have the right not to incriminate yourself; and you have the right to stop answering any questions at any time you desire.
3. You have the right to the assistance of counsel and the right to consult an attorney before answering any questions.
4. You have the right to have an attorney present during any questioning or the giving of any statement.
5. If you cannot afford an attorney, the court will appoint an attorney to represent you.

**NOTE: IF YOU REFUSE THE TEST UNTIL YOU CAN CONSULT AN ATTORNEY, YOUR DRIVER'S LICENSE WILL STILL BE SUSPENDED.**

DATE _____ TIME _____ LOCATION _____

**ARRESTEE'S SIGNATURE**
I am under arrest and have been advised of all the above rights and consequences that affect my driving privileges.

_____                    _____                    _____
ARRESTED PERSON                                        WITNESSES                                        ARRESTING OFFICER(S)

CERTIFICATION OF REFUSAL TO SIGN. I hereby certify that the arrested person _____
was advised of all of the above information, and did not sign for the following reason: ☐ REFUSED    ☐ UNABLE

_____
SIGNATURE OF ARRESTING OFFICER(S)

The law enforcement officer may ask you to submit to more than one chemical test. If you refuse to submit to any test, your driver's license will still be suspended.
**Instructions to submit to chemical test:** You are NOW instructed to submit to the chemical test or tests prescribed by law.

*Figure 1- Exhibit D1*

The form provides information regarding an arrestee's rights related to chemical testing, including:

- The right to refuse the chemical test if the driver was not involved in a crash where a fatality or serious bodily injury occurred.

- There are consequences for refusing to submit to the chemical test, including that driving privileges shall be suspended for a period of

one year if this is the first refusal and evidence of refusal will be used against you in court.

- If a person fails a test, meaning their blood alcohol level is above 0.08 percent, they will lose their license for 90 days.

- A specific section for those people who have a CDL license or are driving a CDL truck, which specifies that refusal to submit to the chemical test or the results of the test indicate a blood alcohol level above 0.08 percent will result in a one-year suspension of their CDL license.

On April 23, 2023, Kilpatrick filed a motion to suppress the results of his breath test, alleging that Deputy McLaughlin was aware that Kilpatrick held a CDL license at the time the form was being read to him and had failed to read him the portion of the form specifically pertaining to persons in possession of a CDL license. Kilpatrick alleges the section that was omitted informed him of his specific consequences as a CDL license holder, and that he would be disqualified for one year if he refused the test or submitted to the test and the result indicated a blood alcohol concentration of .08 percent or higher.[1] The portion read to Kilpatrick was the portion applicable to persons in possession of a non-commercial driver's license, which advised that his driver's license would be suspended for 90 days for submitting to the test if it resulted in a score above a 0.08 percent. Kilpatrick claims he was not advised that his CDL license would be disqualified for one year for a submission with a result above a 0.08 percent. There is no evidence in the

---

[1] It appears that all parties agreed that the portion of the rights form pertaining to persons holding CDLs was not read to Kilpatrick; the State stipulated to that fact at the hearing on Kilpatrick's suppression motion.

3

record before us that Kilpatrick signed the form. Kilpatrick argued that the remedy for not fully informing him of his rights pursuant to La. R.S. 32:661 is the exclusion of his breath test results from his criminal prosecution for driving while intoxicated.

On May 26, 2023, the State filed an opposition to Kilpatrick's motion to suppress, arguing that the only rights form error that warrants suppression of chemical test results is an arresting agent's failure to advise a defendant of his right to refuse the test. The State maintained that any other rights form error was harmless and did not warrant the suppression of the results of a chemical test administered pursuant to La. R.S. 32:661.

On August 30, 2023, a hearing on Kilpatrick's motion to suppress was conducted. At that hearing, Kilpatrick argued that La. R.S. 32:661 mandated that the form be read in its *entirety* when one is asked to submit to a chemical test following an arrest for operating a vehicle while intoxicated. In response, the State argued that the only error related to the reading of the form that warrants suppression is when a defendant is not advised at all of his right to refuse the breath test. The State asserts that Kilpatrick was advised of his rights, including each item required by La. R.S. 32:661, which does not include a specific provision regarding the rights of CDL license holders. At the conclusion of the hearing, the trial court noted that the purpose of the exclusionary rule for the suppression of evidence is to prevent police misconduct. The trial court found there was no apparent intentional police misconduct when Deputy McLaughlin failed to read the entirety of the rights form to Kilpatrick as a holder of a CDL. The trial court denied Kilpatrick's motion to suppress. In response, Kilpatrick filed a writ for supervisory review, which was granted to docket before this Court.

4

**DISCUSSION**

In his sole assignment of error, Kilpatrick asserts that the trial court erred in denying his motion to suppress. In reviewing a trial court's pretrial ruling on a motion to suppress, the appellate court may review the entire record, including testimony at trial. We review the trial court's ruling on a motion to suppress under the manifest error standard for factual determinations, while applying a *de novo* review to findings of law. *State v. Jordan*, 50,002 (La. 8/12/15), 174 So. 3d 1259, *writ denied*, 15-1703 (La. 10/10/16), 207 So. 3d 408.

Any person who operates a vehicle on public highways shall be deemed to have given consent to a chemical test or test of his breath for the purpose of determining the alcoholic content of his blood. La. R.S. 32:661(A)(1). The test will be administered by a law enforcement officer who has reasonable grounds to believe the person operating the motor vehicle was under the influence. La. R.S. 32:661(A)(2)(a). La. R.S. 32:661(C)(1) states that when a law enforcement officer requests that a person submit to a chemical test, he **shall** first read to the person a standardized form approved by the Department of Public Safety and Corrections. The department is authorized to use such language in the form as it, in its sole discretion, deems proper, provided that the form does inform the person of the following:

(a) His constitutional rights under *Miranda v. Arizona*;

(b) That his driving privileges can be suspended for refusing to submit to the chemical test;

(c) That his driving privileges can be suspended if he submits to the chemical test and such test results show a blood alcohol level of 0.08 percent or above;

5

> (d) That his driving privileges can be suspended if he submits to the chemical test and the test results show a positive reading indicating the presence of any controlled dangerous substance;
>
> (e) That refusal to submit to a chemical test after an arrest for an offense of driving while intoxicated if he has refused to submit to such test on two previous and separate occasions is a crime under 14:98.7.

La. R.S. 32:661(C)(1)(a)-(e). Additionally, the arresting officer will request the arrested person sign the form. If they refuse or are unable to sign, the officer shall certify that the arrestee was advised of the information contained in the form and that they were unable to sign or refused to sign. *Id.* at (C)(2). Finally, the notice issued to the person shall include the name and employing agency of all law enforcement officers actively participating in the stop, detention, investigation, or arrest of the person. *Id.* at (D).

Kilpatrick argues that the motion to suppress should have been granted, citing *State v. Alcazar*, 00-0536 (La. 5/15/01), 784 So. 2d 1276. There, police officers did not tell a defendant that he had a right to refuse the breathalyzer test until after he had submitted to the test. The court found that the defendant had received "none of the statutorily mandated warnings prior to taking the breathalyzer test." The court found that any holding which allows the test results to be admitted into evidence when a defendant has not first been advised that he had a right to refuse the test effectively renders La. R.S. 32:661(C)(1) and 32:666(A) meaningless. While the right to refuse is not a constitutional right, it is a matter of grace that the Louisiana Legislature has bestowed upon defendants. *Alcazar*, *supra*. The court ultimately found that the test results were properly suppressed by the trial court.

We find *Alcazar*, *supra*, to be factually distinguishable from the case at bar. Unlike the present case, the officer in *Alcazar*, *supra*, did not give the defendant any of the statutorily mandated warnings prior to taking the breathalyzer test. Here, Kilpatrick was warned that there would be consequences for refusal to take the test, as required by statute; he simply was not warned of the exact consequences for someone holding a CDL driver's license.

We believe the present matter to be comparable to this Court's findings in *State v. Hastings*, 42,624 (La. App. 2 Cir. 6/14/07), 959 So. 2d 1000. There, the police officer read the defendant all the substantive contents of the form but did not read the signature line disclosing the names and employing agency of the officers involved in the stop, detention, and arrest. This Court held that "while we agree that the statute is phrased in mandatory terms, we disagree that the instant *de minimis* omission mandates suppressing the evidence of the chemical test." Similarly, we find the failure of the officer to read that portion of the form that lists the penalties specific to CDL drivers to be a *de minimis* omission, when all other statutorily required portions of the form were read. We maintain our findings from *Hastings*, *supra*, wherein we stated:

> Even though the statute uses the mandatory 'shall,' nothing else suggests that the legislature intended suppression of the evidence as a consequence of this deficiency. The key question for judicial consideration is whether suppression would help deter police misconduct, a key rationale for implementing the state exclusionary rule in *Mapp v. Ohio*, 367 U.S. 643, 81 S. Ct. 1684, 6 L. Ed. 2d 1081 (1961). We do not find that suppressing this evidence would serve that goal.

We note that this Court has evaluated the statutory requirements set forth in La. R.S. 32:661 to determine whether a CDL driver's license should

be reinstated by the Department of Public Safety in *Jacobs v. Dep't of Public Safety*, 53,208 (La. App. 2 Cir. 1/15/20), 289 So. 3d 221 and *State Dep't of Pub. Safety & Corr. in Matter of Litton*, 51,757 (La. App. 2 Cir. 11/15/17), 245 So. 3d 1075. However, matters resolving whether a CDL driver could have his license reinstated due to the statutory requirements set forth in La. R.S. 33:661 are separate and apart from a determination of whether evidence in a criminal proceeding should be suppressed. As we have noted before, "suppression of evidence … has always been our last resort, not our first impulse." *Hastings*, *supra* (*quoting Hudson v. Michigan*, 547 U.S. 586, 126 S. Ct. 2159, 165 L. Ed. 2d 56 (2006)). Kilpatrick argues that because he was not read that portion of the form that includes possible results for CDL drivers, the results of his breathalyzer test should be suppressed. We find this to be a *de minimis* omission that does not warrant suppression of the breathalyzer test results.

Accordingly, we find that Kilpatrick's assignment of error lacks merit and affirm the ruling of the trial court denying the motion to suppress.

## CONCLUSION

For the foregoing reasons, the trial court's denial of applicant's motion to suppress is affirmed.

**AFFIRMED.**

8

**STEPHENS, J., dissenting.**

I respectfully dissent from the majority's opinion. Although the majority views the omission of reading the entirety of the rights form as a *de minimis* exclusion, the law requires strict construction of criminal statutes. La. R.S. 32:661(C)(1) provides that law enforcement officers "**shall**" read a person the standardized form approved by the Department of Public Safety and Corrections. This mandatory language leaves no room for interpretation; a law enforcement officer must read the form to persons the officer has asked to submit to chemical testing. For those drivers who have commercial driver's licenses, this necessarily includes the section pertaining to commercial driver's license holders. In this case, officers omitted reading to Kilpatrick, who in fact has a commercial driver's license, the section for individuals who have a Class A, B, or C commercial driver's license. This omission is clearly contrary to the mandatory language of the statute.

While officers informed Kilpatrick of the penalties he faced for a non-commercial license (which he in fact did not have), they failed to advise him that his Class "A" CDL would be suspended for one year, a penalty that is four times greater than the penalty for a non-commercial driver's license, which is 90 days. The substantive omission of informing a driver with a commercial driver's license of the one-year suspension penalty for a CDL is distinguishable from officers failing to read a signature line disclosing names and the employing agency of officers involved in the stop, detention, and arrest. *See Hastings*, *supra*. Furthermore, when officers fail to read CDL holders the section pertaining to commercial licenses, these individuals' commercial licenses should only be suspended for the period of time for which they were informed. Contrary to my colleagues' positions, I

am of the opinion that failing to inform Kilpatrick of the one-year suspension penalty for his CDL is far from *de minimis* and disagree with the trial court's ruling denying Kilpatrick's motion to suppress. For these reasons, I dissent.