Judgment rendered August 28, 2024.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C. Cr. P.

No. 55,647-KW
No. 55,648-KW
(Consolidated Cases)

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Applicant

versus

CHRISTOPHER MICHAEL JONES          Respondent

* * * * *

On Application for Writs from the
Twenty-Sixth Judicial District Court for the
Parish of Bossier, Louisiana
Trial Court Nos. 246,345 and 246,345A

Honorable Allen Parker Self, Jr., Judge

* * * * *

J. SCHUYLER MARVIN                        Counsel for Applicant
District Attorney

DALE NEWTON MONTGOMERY, II
AMANDA BROTHERTON-TODD
Assistant District Attorneys


WHITLEY R. GRAVES                         Counsel for Respondent

* * * * *

Before PITMAN, STEPHENS, and THOMPSON, JJ.


STEPHENS, J., dissents with written reasons.

**THOMPSON, J.**

When a licensed driver fails or refuses a breathalyzer test, exposure to both administrative and criminal consequences are triggered. In the matter before us, a driver with a commercial driver's license was successful in having the results of his breathalyzer test suppressed by the trial court for an omission of the arresting officer to read the entirety of the rights form promulgated by the Department of Public Safety and Corrections. Finding the omission to be a *de minimis* exclusion that does not justify the suppression of the results, we reverse the trial court and remand this matter for further proceedings.

## FACTS AND PROCEDURAL HISTORY

On January 13, 2023, Christopher Jones ("Jones") was driving a private vehicle westbound on U.S. 80 in Bossier Parish when he was pulled over by Trooper Clemmie Porter, III of the Louisiana State Police. Trooper Porter stopped Jones for improper lane usage, and during the stop, Trooper Porter suspected that Jones was intoxicated. Jones was arrested and transported to the Bossier City Police Department, where he agreed to a breath alcohol test on an Intoxilyzer 9000. Based on observations by the Trooper during the stop and the results of the breath alcohol test, he was charged with operating a vehicle while intoxicated-first offense, a violation of La. R.S. 14:98.1.

Jones has a Class "A" commercial driver's license ("CDL") and drives a commercial truck professionally. On the night of his arrest, he was driving a personal vehicle, not a CDL truck. Before administering the breathalyzer test, Trooper Porter read Jones a portion of the form authorized by the Department of Public Safety and Corrections, the DPSSP 6621 form,

entitled Arrestee's Rights Form-Rights Relating to the Chemical Test for

Intoxication (the "form").

*Figure 1- Exhibit D1*

The form provides information related to an arrestee's rights related to

chemical testing, including:

- The right to refuse the chemical test if the driver was not involved in a crash where a fatality or serious bodily injury occurred.

- There are consequences for refusing to submit to the chemical test, including that driving privileges shall be

suspended for a period of one year if this is the first refusal and evidence of refusal will be used against you in court.

- If a person fails a test, meaning their blood alcohol level is above 0.08 percent, they will lose their license for 90 days.

- A specific section for those people who have a CDL license or are driving a CDL truck, which specifies that refusal to submit to the chemical test or the results of the test indicate a blood alcohol level above 0.08 percent will result in a one-year suspension of their CDL license.

Jones argues that he was not read that specific portion of the form that applies to those people holding a Class "A" CDL. He contends that he was lulled into taking a test because he did not know all of the possible and differing consequences for drivers who hold CDL licenses. He contends that he was advised that his driver's license would be suspended for 90 days for submitting to the test, which resulted in a score above a 0.08 percent but was not advised that his CDL license would be disqualified for one year for a submission with a result above a 0.08 percent. Jones filed a motion to suppress the result of the breathalyzer test. After considering the written motions and argument, the trial court granted the motion to suppress, stating that it found the intent of the legislature was for the entirety of the form to be read to arrestees. The State filed a writ for supervisory review, which was granted to docket before this court.

## DISCUSSION

In its sole assignment of error, the State asserts that the trial court erred in granting Jones's motion to suppress. In reviewing a trial court's pretrial ruling on a motion to suppress, the appellate court may review the entire record, including testimony at trial. We review the trial court's ruling on a motion to suppress under the manifest error standard for factual determinations, while applying a *de novo* review to findings of law. *State v.*

*Jordan*, 50,002 (La. 8/12/15), 174 So. 3d 1259, *writ denied*, 15-1703 (La. 10/10/16), 207 So. 3d 408.

It is well established that any person who operates a vehicle on public highways shall be deemed to have given consent to a chemical test or test of his breath for the purpose of determining the alcoholic content of his blood. La. R.S. 32:661(A)(1). The test will be administered by a law enforcement officer who has reasonable grounds to believe the person operating the motor vehicle was under the influence. La. R.S. 32:661(A)(2)(a). La. R.S. 32:661(C)(1) states that when a law enforcement officer requests that a person submit to a chemical test, he **shall** first read to the person a standardized form approved by the Department of Public Safety and Corrections. The department is authorized to use such language in the form as it, in its sole discretion, deems proper, provided that the form does inform the person of the following:

(a) His constitutional rights under *Miranda v. Arizona*;

(b) That his driving privileges can be suspended for refusing to submit to the chemical test;

(c) That his driving privileges can be suspended if he submits to the chemical test and such test results show a blood alcohol level of 0.08 percent or above;

(d) That his driving privileges can be suspended if he submits to the chemical test and the test results show a positive reading indicating the presence of any controlled dangerous substance;

(e) That refusal to submit to a chemical test after an arrest for an offense of driving while intoxicated if he has refused to submit to such test on two previous and separate occasions is a crime under 14:98.7.

La. R.S. 32:661(C)(1)(a)-(e). Additionally, the arresting officer will request the arrested person sign the form. If they refuse or are unable to sign, the

4

officer shall certify that the arrestee was advised of the information contained in the form and that they were unable to sign or refused to sign. *Id.* at (C)(2). Finally, the notice issued to the person shall include the name and employing agency of all law enforcement officers actively participating in the stop, detention, investigation, or arrest of the person. *Id.* at (D).

The district court granted Jones's motion to suppress on the basis of *State v. Alcazar*, 00-0536 (La. 5/15/01), 784 So. 2d 1276. There, police officers did not tell a defendant that he had a right to refuse the breathalyzer test until after he had submitted to the test. The court found that the defendant had received "none of the statutorily mandated warnings prior to taking the breathalyzer test." The court found that any holding which allows the test results to be admitted into evidence when a defendant has not first been advised that he had a right to refuse the test, effectively renders La. R.S. 32:661(C)(1) and 32:666(A) meaningless. While the right to refuse is not a constitutional right, it is a matter of grace that the Louisiana Legislature has bestowed upon defendants. *Alcazar*, *supra*. The court ultimately found that the test results were properly suppressed by the trial court.

We find *Alcazar*, *supra*, to be distinguishable from the case at bar. Unlike the present case, the officer in *Alcazar*, *supra*, did not give the defendant any of the statutorily mandated warnings prior to taking the breathalyzer test. Here, Jones was provided with notice of his constitutional rights and was warned that there would be consequences for refusal to take the test, as required by statute; he simply was not warned of the exact consequences for someone holding a Class "A" driver's license.

5

We believe the present matter to be comparable to this Court's prior findings in *State v. Hastings*, 42,624 (La. App. 2 Cir. 6/14/07), 959 So. 2d 1000, *writ denied*, 07-1697 (La. 11/2/07), 966 So. 2d 606. There, the police officer read the defendant all the substantive contents of the form but did not read the signature line disclosing the names and employing agency of the officers involved in the stop, detention, and arrest. This Court held that "while we agree that the statute is phrased in mandatory terms, we disagree that the instant *de minimis* omission mandates suppressing the evidence of the chemical test." Similarly, we find the failure of the officer to read that portion of the form that lists the penalties specific to CDL drivers to be a *de minimis* omission, when all other statutorily required portions of the form were read. We maintain our findings from *Hastings*, *supra*, wherein we stated:

> Even though the statute uses the mandatory 'shall,' nothing else suggests that the legislature intended suppression of the evidence as a consequence of this deficiency. The key question for judicial consideration is whether suppression would help deter police misconduct, a key rationale for implementing the state exclusionary rule in *Mapp v. Ohio*, 367 U.S. 643, 81 S. Ct. 1684, 6 L. Ed. 2d 1081 (1961). We do not find that suppressing this evidence would serve that goal.

We note that this Court has evaluated the statutory requirements set forth in La. R.S. 32:661 to determine whether a CDL driver's license should be reinstated by the Department of Public Safety in *Jacobs v. Dep't of Public Safety*, 53,208 (La. App. 2 Cir. 1/15/20), 289 So. 3d 221 and *State Dep't of Pub. Safety & Corr. In Matter of Litton*, 51,757 (La. App. 2 Cir. 11/15/17), 245 So. 3d 1075. However, matters resolving whether a CDL driver could have his license reinstated due to the statutory requirements set forth in La. R.S. 33:661 are separate and apart from a determination of

whether evidence in a criminal proceeding should be suppressed. As we have noted before, "suppression of evidence … has always been our last resort, not our first impulse." *Hastings*, *supra* (*quoting Hudson v. Michigan*, 547 U.S. 586, 126 S. Ct. 2159, 165 L. Ed. 2d 56 (2006)). Jones argues that because he was not read that portion of the form that includes possible results for CDL drivers, the results of his breathalyzer test should be suppressed in his criminal proceedings. We find this to be a *de minimis* omission that does not warrant suppression of the breathalyzer test results. For these reasons, the State's assignment of error has merit, and the trial court's ruling is reversed.

## CONCLUSION

For the foregoing reasons, the trial court's grant of the motion to suppress is reversed. This matter is remanded for further proceedings.

**REVERSED AND REMANDED.**

**STEPHENS, J., dissenting.**

I respectfully dissent from the majority's opinion. Although the majority views the omission of reading the entirety of the rights form as a *de minimis* exclusion, the law requires strict construction of criminal statutes. La. R.S. 32:661(C)(1) provides that law enforcement officers "**shall**" read a person the standardized form approved by the Department of Public Safety and Corrections. This mandatory language leaves no room for interpretation; a law enforcement officer must read the form to persons the officer has asked to submit to chemical testing. For those drivers who have commercial driver's licenses, this necessarily includes the section pertaining to commercial driver's license holders. In this case, officers omitted reading to Jones the section for individuals who have a Class A, B, or C commercial driver's license. This omission is clearly contrary to the mandatory language of the statute.

While officers informed Jones of the penalties he faced for a non-commercial license (which he in fact did not have), they also failed to advise Jones that his Class "A" CDL would be suspended for one year, a penalty that is four times greater than the penalty for a driver with a non-commercial license, which is 90 days. The substantive omission of informing a driver with a CDL license of the one-year suspension penalty for a CDL is distinguishable from officers failing to read a signature line disclosing names and the employing agency of officers involved in the stop, detention, and arrest. *See Hastings*, *supra*. Furthermore, when officers fail to read CDL holders the section pertaining to commercial licenses, these individuals' commercial licenses should only be suspended for the period of time for which they were informed. Contrary to my colleagues' positions, I

1

am of the opinion that failing to inform Jones of the one-year suspension penalty for his CDL is far from *de minimis* and agree with the trial court's ruling suppressing Jones's breath test results. For these reasons, I dissent.